## SUPREME COURT OF VIRGINIA ET AL. v. CONSUMERS UNION OF THE UNITED STATES, INC., ET AL.

No. 79-198.   Argued February 19, 1980—Decided June 2, 1980

720

WHITE, J., delivered the opinion of the Court, in which all other Members joined, except POWELL, J., who took no part in the consideration or decision of the case.

*Marshall Coleman,* Attorney General of Virginia, argued the cause for appellants. With him on the briefs were *Walter H. Ryland,* Chief Deputy Attorney General, and *Philip B. Kurland.*

*Ellen Broadman* argued the cause for appellees. With her on the brief were *Alan Mark Silbergeld, James W. Benton, Jr.,* and *Michael Pollet.*\*

*\*Burt Neuborne, Bruce J. Ennis, Jr.,* and *Stephen Bricker* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging affirmance.

MR. JUSTICE WHITE delivered the opinion of the Court.

This case raises questions of whether the Supreme Court of Virginia (Virginia Court) and its chief justice are officially immune from suit in an action brought under 42 U. S. C. § 1983 challenging the Virginia Court's disciplinary rules governing the conduct of attorneys and whether attorney's fees were properly awarded under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U. S. C. § 1988, against the Virginia Court and its chief justice in his official capacity.

## I

It will prove helpful at the outset to describe the role of the Virginia Court in regulating and disciplining attorneys. The Virginia Court has firmly held to the view that it has inherent authority to regulate and discipline attorneys. *Button* v. *Day,* 204 Va. 547, 552–555, 132 S. E. 2d 292, 295–298 (1963). It also has statutory authority to do so. Section 54–48 of the Code of Virginia (1978) authorizes the Virginia Court to "promulgate and amend rules and regulations . . . [p]rescribing a code of ethics governing the professional conduct of attorneys-at-law. . . ." [1]

Pursuant to these powers, the Virginia Court promulgated the Virginia Code of Professional Responsibility (State Bar Code, Bar Code, or Code), the provisions of which were sub-

---

[1] "§ 54–48. Rules and regulations defining practice of law and prescribing procedure for practice by law students, codes of ethics and disciplinary procedure.—The Supreme Court may, from time to time, prescribe, adopt, promulgate and amend rules and regulations:

"(a) Defining the practice of law.

"(a1) Prescribing procedure for limited practice of law by third-year law students.

"(b) Prescribing a code of ethics governing the professional conduct of attorneys-at-law including the practice of law or patent law through professional law corporations, professional associations and partnerships, and a code of judicial ethics.

"(c) Prescribing procedure for disciplining, suspending, and disbarring attorneys-at-law."

stantially identical to the American Bar Association's Code of Professional Responsibility. Section 54–48 provides no standards for the Virginia Court to follow in regulating attorneys; it is apparent that insofar as the substantive content of such a code is concerned, the State has vested in the court virtually its entire legislative or regulatory power over the legal profession.

Section 54–48 also authorizes the Virginia Court to prescribe "procedure for disciplining, suspending and disbarring attorneys-at-law"; and § 54–49 authorizes the court to promulgate rules and regulations "organizing and governing the association known as the Virginia State Bar, composed of the attorneys-at-law of this State, to act as an administrative agency of the Court for the purpose of investigating and reporting ... violation[s]...." [2] Acting under this authority, the Virginia State Bar (State Bar or Bar) has been organized and its enforcement role vested in an ethics committee and in various district committees. Section 54–51 reserves to the courts the sole power to adjudicate alleged violations of the Bar Code,[3] and hence the role of the State Bar is limited to the

---

[2] "§ 54–49. Organization and government of Virginia State Bar.—The Supreme Court may, from time to time, prescribe, adopt, promulgate and amend rules and regulations organizing and governing the association known as the  Virginia State Bar, composed of the attorneys-at-law of this State, to act as an administrative agency of the Court for the purpose of investigating and reporting the violation of such rules and regulations as are adopted by the Court under this article for such proceedings as may be necessary, and requiring all persons practicing law in this State to be members thereof in good standing."

[3] "§ 54–51. Restrictions as to rules and regulations.—Notwithstanding the foregoing provisions of this article, the Supreme Court shall not adopt or promulgate rules or regulations prescribing a code of ethics governing the professional conduct of attorneys-at-law, which shall be inconsistent with any statute; nor shall it adopt or promulgate any rule or regulation or method of procedure which shall eliminate the jurisdiction of the Courts to deal with the discipline of attorneys-at-law as provided by law; and in no case shall an attorney, who demands to be tried by a court of

investigation of violations and the filing of appropriate complaints in the proper courts. Under § 54–74, the enforcement procedure involves the filing of a complaint in a court of record, the issuance of a rule to show cause against the charged attorney, the prosecution of the case by the commonwealth attorney, and the hearing of the case by the judge issuing the rule together with two other judges designated by the chief justice of the Virginia Supreme Court.[4] Appeal lies to the Virginia Supreme Court.

The courts of Virginia, including the Supreme Court, thus

competent jurisdiction for the violation of any rule or regulation adopted under this article be tried in any other manner."

[4] "§ 54–74. Procedure for suspension or revocation of license.—(1) *Issuance of rule.*—If the Supreme Court of Virginia, or any court of record of this State, observes, or if complaint, verified by affidavit, be made by any person to such court of any malpractice or of any unlawful or dishonest or unworthy or corrupt or unprofessional conduct on the part of any attorney, or that any person practicing law is not duly licensed to practice in this State, such court shall, if it deems the case a proper one for such action, issue a rule against such attorney or other person to show cause why his license to practice law shall not be revoked or suspended. If the complaint, verified by affidavit, be made by a District Committee of the Virginia State Bar, such court shall issue a rule against such attorney to show cause why his license to practice law shall not be revoked or suspended.

"(2) *Judges hearing case.*—At the time such rule is issued the court issuing the same shall certify the fact of such issuance and the time and place of the hearing thereon, to the chief justice of the Supreme Court of Virginia, who shall designate two judges, other than the judge of the court issuing the rule, of circuit courts or courts of record of cities of the first class to hear and decide the case in conjunction with the judge issuing the rule, which such two judges shall receive as compensation ten dollars per day and necessary expenses while actually engaged in the performance of their duties, to be paid out of the State treasury, from the appropriation for criminal charges.

"(3) *Duty of Commonwealth's attorney.*—It shall be the duty of the attorney for the Commonwealth for the county or city in which such case is pending to appear at the hearing and prosecute the case.

"(4) *Action of court.*—Upon the hearing, if the defendant be found guilty by the court, his license to practice law in this State shall be revoked,

play an adjudicative role in enforcing the Bar Code similar to their function in enforcing any statute adopted by the Virginia Legislature and similar or identical to the role they would play had the Bar Code been adopted by the state legislature.

The Virginia Court, however, has additional enforcement power. As we have said, it asserts inherent power to discipline attorneys. Also, § 54–74 expressly provides that if the Virginia Court or any other court of record observes any act of unprofessional conduct, it may itself, without any complaint being filed by the State Bar or by any third party, issue a rule to show cause against the offending attorney. Although once the rule issues, such cases would be prosecuted by the commonwealth attorney, it is apparent that the Virginia Court and other courts in Virginia have enforcement authority beyond that of adjudicating complaints filed by others and beyond the normal authority of the courts to punish attorneys for contempt.

## II

This case arose when, in 1974, one of the appellees, Consumers Union of the United States, Inc. (Consumers Union), sought to prepare a legal services directory designed to assist consumers in making informed decisions concerning utilization of legal services. Consumers Union sought to canvass all

---

or suspended for such time as the court may prescribe; provided, that the court, in lieu of revocation or suspension, may, in its discretion, reprimand such attorney.

"(5) *Appeal.*—The person or persons making the complaint or the defendant, may, as of right, appeal from the judgment of the court to the Supreme Court of Virginia, by petition based upon a true transcript of the record, which shall be made up and certified as in actions at law. In all such cases where a defendant's license to practice law has been revoked by the judgment of the court, his privilege to practice law shall be suspended pending appeal."

Effective July 1, 1981, the judge issuing the rule to show cause will not participate in disciplinary cases, which are to be heard by three judges designated by the chief justice from any circuit other than the one in which the case is pending.

attorneys practicing law in Arlington County, Va., asking for information concerning each attorney's education, legal activities, areas of specialization, office location, fee and billing practices, business and professional affiliations, and client relations. However, it encountered difficulty because lawyers declined to supply the requested information for fear of violating the Bar Code's strict prohibition against attorney advertising. Rule 2–102 (A)(6) of the Code prohibited lawyers from being included in legal directories listing the kind of legal information that Consumers Union sought to publish.[5]

On February 27, 1975, Consumers Union and the Virginia Citizens Consumer Council brought an action pursuant to 42 U. S. C. § 1983 against the Virginia Court, the Virginia State Bar, the American Bar Association, and, in both their individual and official capacities, the chief justice of the Virginia Court, the president of the State Bar, and the chairman

---

[5] At the time Consumers Union sought to canvass Virginia attorneys, Disciplinary Rule 2–102 (A) of the State Bar Code provided in pertinent part: "A lawyer or law firm shall not use professional cards, professional announcement cards, office signs, letterheads, telephone directory listings, law lists, legal directory listings, or similar professional notices or devices, except that the following may be used if they are in dignified form:

.        .        .        .        .

(6) A listing in a reputable law list or legal directory giving brief biographical and other informative data. . . . The published data may include only the following: name, including name of law firm and names of professional associates; addresses and telephone numbers; one or more fields of law in which the lawyer or law firm concentrates; a statement that practice is limited to one or more fields of law; a statement that the lawyer or law firm specializes in a particular field of law or law practice . . . ; date and place of birth; date and place of admission to the bar of state and federal courts; schools attended, with dates of graduation, degrees, and other scholastic distinctions; public or quasi-public offices; military service; posts of honor; legal authorships; legal teaching positions; memberships, offices, committee assignments, and section memberships in bar associations; memberships and offices in legal fraternities and legal societies; technical and professional associations and societies; foreign language ability; names and addresses of references, and, with their consent, names of clients regularly represented."

of the State Bar's Legal Ethics Committee. With respect to the Virginia Court, the complaint identified its chief justice and alleged only that the court had promulgated the Bar Code. The other defendants were alleged to have authority to enforce the Code. Plaintiffs sought a declaration that defendants had violated their First and Fourteenth Amendment rights to gather, publish, and receive factual information concerning attorneys practicing in Arlington County, and a permanent injunction against the enforcement and operation of DR 2–102 (A)(6).

A three-judge District Court was convened pursuant to 28 U. S. C. § 2281 (1970 ed.). Defendants moved for indefinite continuance of the trial on the grounds that the ABA and the State Bar were preparing amendments to relax the advertising prohibitions contained in DR 2–102 (A)(6). Over plaintiff-appellees' opposition, the District Court granted defendants a continuance until March 25, 1976.

On February 17, 1976, the ABA adopted amendments to its Code of Professional Responsibility which would permit attorneys to advertise office hours, initial consultation fees, and credit arrangements. Defendants then sought and obtained a further continuance to permit the Virginia Court and the State Bar to consider amending the State Bar Code to conform to the ABA amendments. Although the governing body of the State Bar recommended that the Virginia Court adopt the ABA amendments to DR 2–102, on April 20, 1976, the court declined to adopt the amendments on the ground that they would "not serve the best interests of the public or the legal profession."

The action then proceeded to trial on May 17, 1976, and was decided on December 17, 1976. *Consumers Union of United States, Inc.* v. *American Bar Assn.*, 427 F. Supp. 506 (ED Va. 1976). The three-judge District Court concluded that abstention would be inappropriate in light of defendants' failure to amend the State Bar Code despite continuances based on the speculation that DR 2–102 (A)(6) would be

relaxed. *Id.,* at 513–516. The court declared that DR 2–102 (A)(6) unconstitutionally restricted the right of plaintiff-appellees to receive and gather nonfee information and information concerning initial consultation fees. Defendants were permanently enjoined from enforcing DR 2–102 (A)(6) save for its prohibition against advertising fees for services other than the initial consultation fee. *Id.,* at 523.

Plaintiff-appellees appealed to this Court, challenging the District Court's refusal to enjoin enforcement of the prohibition of fee advertising. Defendants brought a cross-appeal, arguing that DR 2–102 (A)(6) should have been upheld in its entirety. While these appeals were pending, we decided *Bates* v. *State Bar of Arizona,* 433 U. S. 350 (1977), in which we held that enforcement of a ban on attorney advertising would violate the First and Fourteenth Amendment rights of attorneys seeking to advertise the fees they charged for certain routine legal services. In light of *Bates,* the judgment below was vacated and the case was remanded for further consideration. 433 U. S. 917 (1977).

On remand, defendants agreed that in light of *Bates* DR 2–102 (A)(6) could not constitutionally be enforced to prohibit attorneys from providing plaintiff-appellees with any of the information they sought to publish in their legal services directory. Defendants proposed that a permanent injunction be entered barring them from enforcing DR 2–102 (A)(6) against attorneys providing plaintiff-appellees with information. On May 8, 1979, the District Court declared DR 2–102 (A)(6) unconstitutional on its face and permanently enjoined defendants from enforcing it.[6]

---

[6] The District Court's final order provided in pertinent part:

"1. The publication described in plaintiff's complaint, as amended, is declared valid and constitutionally protected;

"2. The Virginia Code of Professional Responsibility Disciplinary Rule 2–102 (A)(6) is declared unconstitutional on its face;

"3. The defendants, their successors in office, their agents and attorneys and all acting in concert therewith are permanently enjoined from enforce-

Plaintiff-appellees also moved for costs, including an award of attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U. S. C. § 1988.[7] The defendants objected to any fee award on various grounds, including judicial immunity. They did not object to their paying other costs. Although holding the individual defendants immune from attorney's fees liability in their individual capacities, the District Court held that the Act authorized in proper circumstances the award of fees against the State Bar, the Virginia Court and the individual defendants in their official capacities. *Consumers Union of United States, Inc.* v. *American Bar Assn.*, 470 F. Supp. 1055, 1059–1061 (ED Va. 1979).

The District Court went on to conclude that special circumstances made it unjust to award attorney's fees against the State Bar or against the State Bar officers in their official capacities because it was not these defendants but the Virginia Court that had the power to change the State Bar disciplinary rules and because the State Bar and its officers had unsuccessfully sought to persuade the court to amend the Code to conform to what they deemed to be constitutional standards. There were no similar circumstances making it unjust to award attorney's fees against the Virginia Court and its chief justice in his official capacity. This was because the court had denied the State Bar's petition to amend the Code to conform to what were deemed to be the requirements of *Bigelow*,v. *Virginia*, 421 U. S. 809 (1975), and had also failed to amend the Code to conform to the holding in *Bates* v. *State Bar of Arizona*, *supra*. Hence, "[i]t would hardly be unjust to order the

ment of Virginia Code of Professional Responsibility Disciplinary Rule 2–102 (A) (6)."

[7] The Civil Rights Attorney's Fees Awards Act was enacted into law on October 19, 1976, five months after the trial in this action and two months before the District Court's initial decision. The Act is applicable in this case because Congress intended for the Act to apply to actions that were pending when the Act was passed. *Hutto* v. *Finney*, 437 U. S. 678, 694–695, n. 23 (1978).

Supreme Court of Virginia defendants to pay plaintiffs reasonable attorneys fees in light of their continued failure and apparent refusal to amend [the Code] to conform with constitutional requirements." 470 F. Supp., at 1063. The parties were directed to attempt to reach an agreement on a reasonable sum, failing which the court would determine the fee.[8]

On May 23, 1979, defendants filed a petition for rehearing, arguing for the first time, on judicial immunity grounds, that the Virginia Court and its chief justice were exempt from having declaratory and injunctive relief entered against them. It was also argued that in any event it was an abuse of discretion to enter the fee award against the Virginia Court and its chief justice.

Following denial of rehearing, the Virginia Court and its chief justice appealed, presenting the following questions:

1. Is the Supreme Court of Virginia immune from judgment under the doctrine of judicial immunity?
2. May the Civil Rights Attorney's Fees Awards Act of 1976 be construed to permit an award of attorneys' fees against the Supreme Court of Virginia for its judicial acts?
3. Does the doctrine of judicial immunity preclude the award of attorneys' fees for failure to correct a challenged judicial act which is the subject of litigation?
4. On the facts before it, did the District Court abuse its discretion in awarding fees against the Virginia Court?

Appellees moved to dismiss or affirm, the motion to dismiss urging that the claim of judicial immunity from declaratory or injunctive relief was not properly before the Court be-

---

[8] Judge Warriner dissented on the grounds that legislative immunity barred an award of attorney's fees and that it would be unjust to award attorney's fees against a state supreme court in the absence of a showing of bad faith. 470 F. Supp., at 1063.

cause it had not been timely raised in the District Court and had therefore been waived. We noted probable jurisdiction, 444 U. S. 914 (1979).

## III

Title 42 U. S. C. § 1988, as amended by the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, provides in pertinent part:

> "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

The District Court held that in light of the § 1983 judgment that had been entered in favor of appellees, the Act authorized an award of attorney's fees against appellants. Appellants urge that this was error. Their primary contention is that on the grounds of absolute legislative or judicial immunity they should have been excluded from the judgment below and also from liability for attorney's fees. Appellees on the other hand assert that neither judicial nor legislative immunity immunized these defendants from declaratory or injunctive relief as distinguished from a damages award; and in any event they insist that the judgment stand against these defendants because the Virginia Court itself shares direct enforcement authority with the State Bar and hence is subject to prospective judgments just as other enforcement officials are.[9]

---

[9] As indicated in the text, the motion to dismiss the appeal rested on the failure of appellants to have raised the immunity issue at an earlier time. We noted probable jurisdiction, and appellees' brief on the merits has not again urged that the claim of immunity was not timely raised either with respect to the fee question alone or with respect to the entry of prospective relief against the Virginia Court and its chief justice. Their arguments, like those of appellants, are centered on the issues of judicial and legislative immunity.

## A

Appellees sought declaratory and injunctive relief with respect to particular provisions of the State Bar Code propounded by the Virginia Court. Although it is clear that under Virginia law the issuance of the Bar Code was a proper function of the Virginia Court, propounding the Code was not an act of adjudication but one of rulemaking. The District Court below referred to the issuance of the Code as a judicial function, but this is not conclusive upon us for the purpose of deciding whether issuance of the Code is a judicial act entitled to immunity under § 1983. Judge Warriner, dissenting in the District Court, agreed with a prior District Court holding in *Hirschkop* v. *Virginia State Bar,* 421 F. Supp. 1137, 1156 (ED Va. 1976), rev'd in part on other grounds *sub nom. Hirschkop* v. *Snead,* 594 F. 2d 356 (CA4 1979), that in promulgating disciplinary rules the Virginia Supreme Court acted in a legislative capacity. Judge Warriner said:

> "Disciplinary rules are rules of general application and are statutory in character. They act not on parties litigant but on all those who practice law in Virginia. They do not arise out of a controversy which must be adjudicated, but instead out of a need to regulate conduct for the protection of all citizens. It is evident that, in enacting disciplinary rules, the Supreme Court of Virginia is constituted a legislature." 470 F. Supp., at 1064.

We agree with this analysis and hence must inquire whether the Virginia Court and its chief justice are immune from suit for acts performed in their legislative capacity.

We have already decided that the Speech or Debate Clause immunizes Congressmen from suits for either prospective relief or damages. *Eastland* v. *United States Servicemen's Fund,* 421 U. S. 491, 502–503 (1975). The purpose of this immunity is to insure that the legislative function may be performed independently without fear of outside interference. *Ibid.* To preserve legislative independence, we have concluded that

"legislators engaged 'in the sphere of legitimate legislative activity,' *Tenney* v. *Brandhove*, [341 U. S. 367, 376 (1951)], should be protected not only from the consequences of litigation's results but also from the burden of defending themselves." *Dombrowski* v. *Eastland*, 387 U. S. 82, 85 (1967).

We have also recognized that state legislators enjoy common-law immunity from liability for their legislative acts, an immunity that is similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause. *Tenney* v. *Brandhove*, 341 U. S. 367 (1951). In *Tenney* we concluded that Congress did not intend § 1983 to abrogate the common-law immunity of state legislators. Although *Tenney* involved an action for damages under § 1983, its holding is equally applicable to § 1983 actions seeking declaratory or injunctive relief.[10]   In holding that § 1983 "does not create

---

[10] This seems to be the view of the Court of Appeals for the Second Circuit in its recent holding in *Star Distributors, Ltd.* v. *Marino*, 613 F. 2d 4 (1980). That court held that the legislative immunity enjoyed by the members of a state legislative committee bars an action for declaratory and injunctive relief just as it bars an action for damages. Understanding that *Tenney* was based on the similarity between common-law immunity and the Speech or Debate Clause, the Second Circuit reasoned that legislative immunity should protect state legislators in a manner similar to the protection afforded Congressmen. The Courts of Appeals for the Fifth and Eighth Circuits have dismissed on immunity grounds suits seeking both damages and injunctive relief but without separately addressing the issue of immunity from prospective relief. *Safety Harbor* v. *Birchfield*, 529 F. 2d 1251 (CA5 1976); *Smith* v. *Klecker*, 554 F. 2d 848 (CA8 1977); *Green* v. *DeCamp*, 612 F. 2d 368 (CA8 1980). The Court of Appeals for the Fourth Circuit, however, takes the contrary view and rejects the notion that the legislative immunity enjoyed by state officials bars suits for prospective relief. *Jordan* v. *Hutcheson*, 323 F. 2d 597 (1963); *Eslinger* v. *Thomas*, 476 F. 2d 225, 230 (1973). Both opinions of the Court of Appeals for the Fourth Circuit, however, were rendered prior to this Court's decision in *Eastland* v. *United States Servicemen's Fund*, 421 U. S. 491 (1975). The Court of Appeals for the Ninth Circuit may have a similar view with respect to the immunity enjoyed by officials of a regional body exercising both legislative and executive powers. *Jacobson* v. *Tahoe Regional Planning Agency*, 566 F. 2d 1353 (1977).

civil liability" for acts unknown "in a field where legislators traditionally have power to act," *id.,* at 379, we did not distinguish between actions for damages and those for prospective relief. Indeed, we have recognized elsewhere that "a private civil action, whether for an injunction or damages, creates a distraction and forces [legislators] to divert their time, energy, and attention from their legislative tasks to defend the litigation." *Eastland* v. *United States Servicemen's Fund, supra,* at 503. Although the separation-of-powers doctrine justifies a broader privilege for Congressmen than for state legislators in criminal actions, *United States* v. *Gillock,* 445 U. S. 360 (1980), we generally have equated the legislative immunity to which state legislators are entitled under § 1983 to that accorded Congressmen under the Constitution. *Eastland* v. *United States Servicemen's Fund, supra,* at 502–503, 505, 506; *Dombrowski* v. *Eastland, supra,* at 84–85; *United States* v. *Johnson,* 383 U. S. 169, 180 (1966); *Tenney* v. *Brandhove, supra,* at 377–379.[11] Thus, there is little doubt that if the Virginia Legislature had enacted the State Bar Code and if suit had been brought against the legislature, its committees, or members for refusing to amend the Code in the wake of our cases indicating that the Code in some respects would be held invalid, the defendants in that suit could

---

[11] Contrary to appellees' suggestion, we do not view *Lake Country Estates, Inc.* v. *Tahoe Regional Planning Agency,* 440 U. S. 391 (1979), as indicating our approval of injunctive relief against a regional legislative body or its officers. No injunctive relief had been awarded when *Lake Country Estates* reached this Court. Although it is not entirely clear, the Court of Appeals in that case seemed to believe that immunity would not bar a suit for equitable relief against officials of the Tahoe Regional Planning Agency (TRPA). The court did not specify whether equitable relief could be founded on acts for which the officials would otherwise enjoy legislative immunity, and this Court did not have occasion to express any view on this question because the TRPA never challenged this aspect of the Court of Appeals' decision. We simply affirmed the Court of Appeals' holding that TRPA officials could not be held liable in damages for their legislative acts.

successfully have sought dismissal on the grounds of absolute legislative immunity.[12]

Appellees submit that whatever may be true of state legislators, the Virginia Court and its members should not be accorded the same immunity where they are merely exercising a delegated power to make rules in the same manner that many executive and agency officials wield authority to make rules in a wide variety of circumstances. *All* of such officials, it is urged, are not absolutely immune from civil suit. As much could be conceded, but it would not follow that, as appellees would have it, in *no* circumstances do those who exercise delegated legislative power enjoy legislative immunity. In any event, in this case the Virginia Court claims inherent power to regulate the Bar, and as the dissenting judge below indicated, the Virginia Court is exercising the State's entire legislative power with respect to regulating the Bar, and its members are the State's legislators for the purpose of issuing the Bar Code. Thus the Virginia Court and its members are immune from suit when acting in their legislative capacity.

## B

If the sole basis for appellees' § 1983 action against the Virginia Court and its chief justice were the issuance of, or failure to amend, the challenged rules, legislative immunity would foreclose suit against appellants. As has been pointed out, however, the Virginia Court performs more than a legislative role with respect to the State Bar Code. It also hears appeals from lower court decisions in disciplinary cases, a traditional adjudicative task; and in addition, it has independent enforcement authority of its own.

Adhering to the doctrine of *Bradley* v. *Fisher,* 13 Wall. 335 (1872), we have held that judges defending against § 1983

---

[12] Of course, legislators sued for enacting a state bar code might also succeed in obtaining dismissals at the outset on grounds other than legislative immunity, such as the lack of a case or controversy.

actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities. *Pierson* v. *Ray*, 386 U. S. 547 (1967); *Stump* v. *Sparkman*, 435 U. S. 349 (1978). However, we have never held that judicial immunity absolutely insulates judges from declaratory or injunctive relief with respect to their judicial acts. The Courts of Appeals appear to be divided on the question whether judicial immunity bars declaratory or injunctive relief; [13] we have not addressed the question.[14]

---

[13] The Courts of Appeals for the Second, Fourth, and Seventh Circuits are of the view that judicial immunity does not extend to declaratory and injunctive relief. *Heimbach* v. *Village of Lyons*, 597 F. 2d 344, 347 (CA2 1979); *Timmerman* v. *Brown*, 528 F. 2d 811, 814 (CA4 1975); *Fowler* v. *Alexander*, 478 F. 2d 694, 696 (CA4 1973); *Harris* v. *Harvey*, 605 F. 2d 330, 335, n. 7 (CA7 1979); *Hansen* v. *Ahlgrimm*, 520 F. 2d 768, 769 (CA7 1975); *Jacobson* v. *Schaefer*, 441 F. 2d 127, 130 (CA7 1971). Three other Courts of Appeals, the Eighth, Ninth, and District of Columbia Circuits seem to agree. *Kelsey* v. *Fitzgerald*, 574 F. 2d 443, 444 (CA8 1978); *Williams* v. *Williams*, 532 F. 2d 120, 121–122 (CA8 1976); *Shipp* v. *Todd*, 568 F. 2d 133, 134 (CA9 1978); *Briggs* v. *Goodwin*, 186 U. S. App. D. C. 179, 184, n. 4, 569 F. 2d 10, 15, n. 4 (1977). It is rare, however, that any kind of relief has been entered against judges in actions brought under § 1983 and seeking to restrain or otherwise control or affect the future performance of their adjudicative role. Such suits have been recurringly dismissed for a variety of reasons other than immunity. Hence, the question of awarding attorney's fees against judges will not often arise.

[14] Although we did not address the issue, a state judge was among the defendants in *Mitchum* v. *Foster*, 407 U. S. 225 (1972), where the Court held that § 1983 served to pierce the shield of 28 U. S. C. § 2283 against a federal court enjoining state-court proceedings. The Court did say, quoting from *Ex parte Virginia*, 100 U. S. 339, 346 (1880), to this effect, that § 1983 was designed to enforce the provisions of the Fourteenth Amendment against all state action, whether that action be executive, legislative, or *judicial*. The Court also noted that the proponents of § 1983 at the time it was enacted insisted that state courts were being used to harass and injure citizens, perhaps because they were powerless to stop deprivations

We need not decide whether judicial immunity would bar prospective relief, for we believe that the Virginia Court and its chief justice properly were held liable in their enforcement capacities. As already indicated, § 54–74 gives the Virginia Court independent authority of its own to initiate proceedings against attorneys. For this reason the Virginia Court and its members were proper defendants in a suit for declaratory and injunctive relief, just as other enforcement officers and agencies were.[15]

Prosecutors enjoy absolute immunity from damages liability, *Imbler* v. *Pachtman,* 424 U. S. 409 (1976), but they are natural targets for § 1983 injunctive suits since they are the state officers who are threatening to enforce and who are enforcing the law. *Gerstein* v. *Pugh,* 420 U. S. 103 (1975),

---

or were in league with those who were bent upon abrogating federally protected rights. 407 U. S., at 242.

In *Boyle* v. *Landry,* 401 U. S. 77 (1971), and *O'Shea* v. *Littleton,* 414 U. S. 488 (1974), lower courts had entered injunctions against state officials including state-court judges. In each case, we reversed on the grounds that no case or controversy had been made out against any of the appellants in this Court; and in *O'Shea,* we concluded that even assuming that there was a case or controversy, insufficient grounds for equitable relief had been presented. We did not suggest, however, that judges were immune from suit in their judicial capacity.

*Gerstein* v. *Pugh,* 420 U. S. 103 (1975), involved a judgment against state-court judges and a prosecuting official declaring unconstitutional and enjoining the enforcement of certain state statutes. The prosecutor brought the case to this Court. We affirmed the declaration that the Florida procedures at issue were unconstitutional and held that *Younger* v. *Harris,* 401 U. S. 37 (1971), did not bar injunctive relief in the circumstances of the case. No issue of absolute immunity was raised or addressed.

[15] Of course, as *Boyle* v. *Landry, supra,* and *O'Shea* v. *Littleton, supra,* indicate, mere enforcement authority does not create a case or controversy with the enforcement official; but in the circumstances of this case, a sufficiently concrete dispute is as well made out against the Virginia Court as an enforcer as against the State Bar itself. See *Person* v. *Association of the Bar of New York,* 554 F. 2d 534, 536–537 (CA2 1977).

is only one of a myriad of such cases since *Ex parte Young,* 209 U. S. 123 (1908), decided that suits against state officials in federal courts are not barred by the Eleventh Amendment. If prosecutors and law enforcement personnel cannot be proceeded against for declaratory relief, putative plaintiffs would have to await the institution of state-court proceedings against them in order to assert their federal constitutional claims. This is not the way the law has developed, and, because of its own inherent and statutory enforcement powers, immunity does not shield the Virginia Court and its chief justice from suit in this case.[16]

## IV

Because appellees properly prevailed in their § 1983 action, the Civil Rights Attorney's Fees Awards Act, 42 U. S. C. § 1988, authorized the District Court, "in its discretion," to award them "a reasonable attorney's fee," which may be recovered from state officials sued in their official capacities. *Hutto* v. *Finney,* 437 U. S. 678, 694 (1978). Applying the standard of *Newman* v. *Piggie Park Enterprises,* 390 U. S. 400, 402 (1968), the District Court indicated that attorney's fees should ordinarily be awarded " 'unless special circumstances would render such an award unjust.' " 470 F. Supp., at 1061.[17]

---

[16] Although appellants argued below that the Virginia Court as an entity is not a "person" suable under § 1983, they have not raised this issue before this Court. In any event, prospective relief was properly awarded against the chief justice in his official capacity; and absent a valid claim of immunity, the question remains whether the District Court's award of attorney's fees was proper. Although we would not have appellate jurisdiction under 28 U. S. C. § 1253 to decide the attorney's fees question had it alone been appealed, because the case is properly here on the § 1983 issue we have jurisdiction to decide the attorney's fees issue. Cf. *Rosado* v. *Wyman,* 397 U. S. 397, 404–405 (1970).

[17] The District Court derived this standard from the Senate Committee Report on the Civil Rights Attorney's Fees Awards Act, which stated:

"It is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights Act. A party seeking to enforce the rights protected by the statutes covered by [the

Accordingly, enforcement authorities against whom § 1983 judgments have been entered would ordinarily be charged with attorney's fees. The District Court nevertheless considered it unjust to require the State Bar defendants to pay attorney's fees because they had recommended that the State Bar Code be amended to conform to what the Bar thought our cases required and because the Virginia Court declined or failed to adopt this proposal. No similar circumstances excused the Virginia Court, the court held, for it was the very authority that had propounded and failed to amend the challenged provisions of the Bar Code.

We are unable to agree that attorney's fees should have been awarded for the reasons relied on by the District Court. Although the Virginia Court and its chief justice were subject to suit in their direct enforcement role, they were immune in their legislative roles. Yet the District Court's award of attorney's fees in this case was premised on acts or omissions for which appellants enjoyed absolute legislative immunity. This was error.

We held in *Hutto* v. *Finney, supra,* that Congress intended to waive whatever Eleventh Amendment immunity would otherwise bar an award of attorney's fees against state officers, but our holding was based on express legislative history indicating that Congress intended the Act to abrogate Eleventh Amendment immunity. There is no similar indication in the legislative history of the Act to suggest that Congress intended to permit an award of attorney's fees to be premised on acts for which defendants would enjoy absolute legislative immunity. The House Committee Report on the Act indicates that Congress intended to permit attorney's fees awards in cases in which prospective relief was properly

Act], if successful, 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' *Newman* v. *Piggie Park Enterprises, Inc.,* 390 U. S. 400, 402 (1968)." S. Rep. No. 94–1011, p. 4 (1976).

awarded against defendants who would be immune from damages awards, H. R. Rep. No. 94–1558, p. 9 (1976), but there is no indication that Congress intended to permit an award of attorney's fees to be premised on acts that themselves would be insulated from even prospective relief. Because the Virginia Court is immune from suit with respect to its legislative functions, it runs counter to that immunity for a district court's discretion in allowing fees to be guided by considerations centering on the exercise or nonexercise of the state court's legislative powers.

This is not to say that absent some special circumstances in addition to what is disclosed in this record, a fee award should not have been made in this case. We are not convinced that it would be unfair to award fees against the State Bar, which by statute is designated as an administrative agency to help enforce the State Bar Code. Fee awards against enforcement officials are run-of-the-mill occurrences, even though, on occasion, had a state legislature acted or reacted in a different or more timely manner, there would have been no need for a lawsuit or for an injunction. Nor would we disagree had the District Court awarded fees not only against the Bar but also against the Virginia Court because of its own direct enforcement role. However, we hold that it was an abuse of discretion to award fees because the Virginia Court failed to exercise its rulemaking authority in a manner that satisfied the District Court. We therefore vacate the award of attorney's fees and remand for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE POWELL took no part in the consideration or decision of this case.