MULTI–FAMILY COUNCIL OF SOUTH-
EASTERN PENNSYLVANIA and
Chancellor Associates

v.

The MUNICIPAL COURT OF the CITY OF PHILADELPHIA, and Honorable Joseph R. Glancey, and Bernard A. Scally, III, and the Court of Common Pleas of Philadelphia, and Honorable Edward J. Bradley, and Honorable Eugene Gelfand, and Honorable David N. Savitt, and John J. Pettit, Jr., Esquire.

Civ. A. No. 81–3754.

United States District Court,
E. D. Pennsylvania.

March 3, 1982.

**140**

Robert Guzzardi, Richard Tiger, Philadelphia, Pa., for plaintiffs.

Stephen Bosch, Deputy City Sol., Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Plaintiffs Multi-Family Council and Chancellor Associates brought this action pursuant to 42 U.S.C. § 1983 seeking monetary damages and declaratory and injunctive relief. Defendants have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted. For the reasons stated below, defendants' motion will be granted.

Plaintiffs' complaint names a variety of defendants, including the Philadelphia Municipal Court, the Philadelphia Court of Common Pleas, several of the presiding and administrative judges of these courts and several court administrators and clerks of court. In setting forth their claim, plaintiffs allege that delays attributable to the Philadelphia court system's procedures for handling complaints filed by landlords seeking to evict tenants for nonpayment of rent violate the landlords' right to a speedy adjudication of their eviction actions—a right which, according to plaintiffs, is derived from the due process clause. In addition to damages, plaintiffs seek injunctive relief requiring: (a) that the Philadelphia municipal courts schedule hearings within five to eight days after the filing of a complaint seeking summary eviction; (b) that the

courts only grant continuances where justifiable and provide for shorter continuances; (c) that tenants appealing from adverse judgments be required to post bond; (d) that the thirty-day appeal period be shortened; and (e) that hearings on petitions to permit *in forma pauperis* appeals be held within five days after a tenant's notice of appeal is filed.

At the outset, it is clear that plaintiffs' claim under section 1983 for monetary damages against judicial officers named in the complaint must be dismissed since the Supreme Court has consistently held that such officers "enjoy absolute immunity from damages liability for acts performed in their judicial capacities." *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 1976, 64 L.Ed.2d 641 (1980) (citations omitted). *See Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). There is no question that the procedures complained of, such as granting continuances, setting court calendars, and granting petitions to proceed *in forma pauperis,* are acts performed in a judicial capacity and therefore cannot be the predicate of a damage claim.

However, plaintiffs' complaint suffers from a far more grave defect. Plaintiffs' principal contentions reduce to a claim that they have a federal constitutional right, protected by the due process clause, to a speedy adjudication of their summary eviction claims in the Philadelphia courts. And they contend that the delays allegedly caused by current court procedures lead to economic injury by preventing the expeditious repossession of apartment units. Their claim fails, in my judgment, primarily because they have not asserted any basis for requiring, as a constitutional matter, that the adjudication of landlord eviction claims be conducted according to a timetable faster than that under which, pursuant to the governing state legislation, the Philadelphia courts are now operating. Whatever complaint plaintiffs may have with the

current scheme would be more properly directed to the Pennsylvania Legislature, rather than to a federal court.

■ At one time, the governing state legislation, see 68 Pa.Stat.Ann. § 250.503, did mandate the five-to-eight day timetable for hearings on summary repossession actions which plaintiffs now insist is their constitutional due. But in 1976 the Legislature repealed that requirement, along with many other provisions relating to court procedures, and enacted a general, open-ended provision, 42 Pa.Con.Stat.Ann. § 1722, which delegates to the Pennsylvania Supreme Court authority to promulgate rules and administrative procedures governing the conduct of cases in the Pennsylvania courts. This sweeping statutory revision clearly contemplated a greater degree of flexibility for courts in scheduling cases. And the current practice in the Philadelphia court system of scheduling a hearing in landlord-tenant actions within twenty-one days clearly derives from this new legislative framework. It is not surprising that plaintiffs are unhappy with a change which somewhat diminishes the priority of eviction proceedings over other categories of civil litigation. But their unhappiness is not, without more, evidence of a constitutional deprivation.

To support their proposition that landlords are constitutionally entitled to a speedy adjudication of summary eviction proceedings, plaintiffs rely primarily on language from the Supreme Court's decision in Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972):

There are unique factual and legal characteristics of the landlord-tenant relationship that justify special statutory treatment inapplicable to other litigants. The tenant is, by definition, in possession of the property of the landlord; unless a judicially supervised mechanism is provided for what would otherwise be swift repossession by the landlord himself, the tenant would be able to deny the landlord the rights of income incident to ownership by refusing to pay rent and by preventing sale or rental to someone else.

Many expenses of the landlord continue to accrue whether a tenant pays his rent or not. Speedy adjudication is desirable to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment and dispossession when his lease or rental agreement gives him the right to peaceful and undisturbed possession of the property.

Id. at 72–73, 92 S.Ct. at 873–874 (emphasis added).

However, a careful reading of the Lindsey decision makes clear that plaintiffs' bold proposition finds no support in the Court's opinion. The tenant plaintiffs in Lindsey challenged Oregon's forcible entry and wrongful detainer procedures, which are similar in some respects to Pennsylvania's landlord-tenant law, on the ground, inter alia, that the six-day hearing schedule imposed such a fast timetable that tenants lacked sufficient time to prepare an adequate defense to the landlord's nonpayment-of-rent claim. The Court held that this early-trial provision did not deprive tenants of due process.

■ In upholding this element of Oregon's landlord-tenant procedure, the Court noted that expeditious summary proceedings were a rational mechanism to achieve rapid and peaceful settlement of possessory disputes between landlord and tenant in order to avoid the use of force which had plagued landlord-tenant relations before the establishment of summary proceedings. See Lindsey v. Normet, supra, 405 U.S. at 72–73, 92 S.Ct. at 873–874. Thus, the language from Lindsey quoted above must be understood in context—as an explanation of the rationale for the state's decision to adopt summary procedures. So understood, the quoted language cannot also do service as a declaration of a constitutional entitlement. The Lindsey Court certainly did not intend to announce that, to comply with due process, every state must adopt the timetable established by Oregon. What the Court intended to announce—and did announce—was that such a timetable did not on its face violate the due process rights of tenants. Therefore, plaintiffs' reliance on

*Lindsey* is misplaced. Even assuming the truth of plaintiffs' factual allegations, there is no basis for the relief requested since plaintiffs have not been deprived of a constitutionally protected interest by defendants' conduct.

 Acceptance of plaintiffs' view that their complaint states a cause of action under section 1983 would mean that a federal court has authority to determine, as a matter of constitutional priority, not merely the degree of preference, if any, which state courts should be required to accord criminal as against civil litigation, but, within the universe of civil cases, the relative pecking order of eviction proceedings versus automobile accident cases versus domestic relations matters versus defamation suits versus products liability claims, etc. It is hard to imagine a less appropriate form of federal judicial intervention in state concerns. The institutions equipped and entitled to consider plaintiffs' grievance are the courts and Legislature of Pennsylvania.