Anthony **TORRES**, Plaintiff,

v.

Beverly **GRUNKMEYER**, and Russ Donley, in their official and individual capacities Defendants.

No. C84–0046–B.

United States District Court, D. Wyoming.

Feb. 1, 1985.

Stephen L. Pevar, American Civil Liberties Union, Denver, Colo., Richard Wolf, Cheyenne, Wyo., for plaintiff.

John R. Hursh and Holly Brown, Central Wyoming Law Associates, P.C., Riverton, Wyo., for defendants.

### ORDER ON MOTIONS

BRIMMER, Chief Judge.

The above-entitled matter came before the Court pursuant to several motions made by both parties to this case. Defendants, at the close of plaintiff's case, moved for a directed verdict, dismissing the plaintiff's cause of action upon the grounds:

(1) that there was no evidence of wilful and wanton misconduct to justify plaintiff's claim for punitive damages;

(2) that there was no evidence before the Court that the plaintiff suffered any injury;

(3) that the defendants at all times were acting in their official capacity and therefore have absolute legislative immunity; and

(4) that this is an action against the State of Wyoming, which is prohibited by the Eleventh Amendment, and that the State of Wyoming is an indispensable party thereto.

At the end of defendants' case, plaintiff moved for a directed verdict on the issue of qualified immunity, and the question of whether or not political affiliation was actually considered by the defendants.

The Court orally granted the defendants' motion with respect to the claims for punitive damages, reserved ruling upon the motion to dismiss on the grounds of insufficient evidence, denied the motions based on absolute immunity and the Eleventh Amendment and reserved ruling on plaintiff's motions. The Court, having now reviewed the pleadings and the evidence offered, and being fully advised in the premises, FINDS and ORDERS as follows:

■ The main factual issue in question in this matter is quite straightforward. The jury must decide whether defendants considered plaintiff's political affiliation, or lack thereof, in deciding not to hire him as a janitor for the Wyoming House of Representatives. Defendants contend that they are entitled to a directed verdict on this issue because plaintiff failed to produce sufficient evidence. The Court disagrees. Plaintiff testified that defendants led him to believe that if he failed to register as a Republican, he would not be hired, and that when he got angry and refused, defendants decided not to hire him. Defendants claim that plaintiff's political affiliation was not considered but rather that he was not hired because of his belligerent attitude. This is clearly an issue of fact for the jury, and a directed verdict on this matter would be inappropriate. For the same reasons, plaintiff's motion for a directed verdict on this question of fact was also denied.

■ Defendants further assert that the State of Wyoming is the true party in

interest in this matter, and therefore that the case is barred by the Eleventh Amendment. Per Order of this Court, dated April 17, 1984, a motion to dismiss based on these grounds was denied. The Court stands by this Order in denying further motions based on the Eleventh Amendment, but would add one further comment. The State of Wyoming was not sued, and the Attorney General of Wyoming did not defend this case. The fact that the Management Council of the Wyoming Legislature has now voted to indemnify defendants, should they be found liable, does not bring the state into this case. The Management Council does not bind the whole Legislature, which can vote against the matter, or even vote for it and then decide otherwise during the next session. Thus, *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), is not applicable. The State of Wyoming is not legally bound to pay any judgment in this case, defendants are. Therefore, the Eleventh Amendment is not a factor in this matter.

■ Defendants also contend that they are entitled to absolute legislative immunity. The Court has serious doubts that defendant Grunkmeyer, as a part-time hiring clerk, would ever be entitled to absolute immunity. *See e.g. Eslinger v. Thomas,* 476 F.2d 225 (4th Cir.1973). However, since the Court has concluded that neither defendant is entitled to absolute immunity, it is not necessary to decide that issue.

It has long been recognized that legislators are entitled to absolute immunity for any acts conducted within the traditional sphere of legislative activities. *See e.g. Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). State legislators are entitled to the same legislative immunity as that enjoyed by their federal counterparts. *See Supreme Court of Va. v. Consumers Union,* 446 U.S. 719, 732, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980). Thus, in deciding whether an activity is within the sphere of legislative activity, it is necessary to look to the guidelines promulgated by the United States Supreme Court. Before proceeding to the legal issue, however, it is necessary to discuss the factual allegations. Plaintiff alleges that defendant Grunkemeyer, upon orders from defendant Donley, Speaker of the Wyoming House of Representatives, refused to hire him as a janitor because he was not a member of the majority party. We are not faced here with a House Resolution favoring the hiring of Republicans; rather, the Speaker adopted a policy of patronage hiring based on the customs and traditions of Wyoming politics. Since the current Speaker has changed this policy, it seems clear that the patronage orders came not from the Wyoming House, but rather from defendant Donley himself.

Assuming, arguendo, that plaintiff's version of the facts is correct, the question arises whether, despite a claim of constitutional violation, defendants are nevertheless immune from liability for a possible violation of plaintiff's rights as defined in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The concept of legislative immunity arises from Article I, Section 6 of the United States Constitution, which, in discussing the privileges of Senators and Representatives, states:

and for any Speech or Debate in either House, they shall not be questioned in any other Place.

The Supreme Court has construed the Speech and Debate Clause to protect conduct such as committee proceedings and investigations, and extended coverage to Congressional aides, "(b)ut the Clause has not been extended beyond the legislative sphere." *Gravel v. United States,* 408 U.S. 606, 624, 92 S.Ct. 2614, 2626, 33 L.Ed.2d 583 (1972).

As the Supreme Court made clear in *Gravel:*

Legislative acts are not all-encompassing. The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in

committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House. *Id.* at 625 [92 S.Ct. at 2627].

The Court is hard-pressed to believe that the hiring of janitors fits within this definition of legislative activity. Hiring and firing is a purely administrative, not legislative function. We agree with the Court in *Bush v. Orleans Parish School Board,* 188 F.Supp. 916, 922 (E.D.La.1960), *aff'd per curiam,* 365 U.S. 569, 81 S.Ct. 754, 5 L.Ed.2d 806 (1961), that when a legislator "seeks to act as executor of (his) own laws, then, quite obviously, (he) is no longer legislating and is no more immune from process than the administrative officials (he) supersedes." Defendant Donley, with the assistance of defendant Grunkemeyer, is accused of attempting to execute a patronage policy. If this accusation is valid, then defendants are not entitled to absolute immunity for performing this administrative function.

Furthermore, to grant absolute immunity for the exercising of such administrative functions, would extend the protection of the Speech and Debate Clause into an area already foreclosed by the Court in such cases as *Kilbourn v. Thompson,* 103 U.S. (13 Otto) 168, 26 L.Ed. 377 (1880); *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967); and *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). In these cases the Court held that the fact that the Congress had authorized unconstitutional acts, afforded no protection for those who had carried out the acts. As the Court stated in *Gravel,* "(u)nlawful conduct of this kind the Speech or Debate Clause simply did not immunize." 408 U.S. at 620, 92 S.Ct. at 2624. Thus, if defendants Donley and Grunkemeyer executed an unconstitutional patronage program, they are not entitled to immunity for that execution. Such acts are not essential to the legislative process, and therefore not protected by legislative immunity. *Gravel* at 621, 92 S.Ct. at 2625.

The Court would further note that if such actions were entitled to legislative immunity, legislators and their staffs would be free to violate clearly established rights and privileges with impunity, something the Speech and Debate Clause was never meant to authorize.

■ Defendants also contend that as public officials they are entitled to a qualified, good faith immunity. A public official who acts in good faith is only liable for violating a party's civil rights "if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). Defendants allege that they had not heard of the Supreme Court decisions which declared many forms of patronage unconstitutional, and instead were only aware that patronage is an old, established custom in Wyoming. Thus, defendants contend that since they did not realize that patronage was unconstitutional, and further since they relied in good faith on Wyoming policies and customs, that they are entitled to good faith immunity.

The Court declines to give such broad instruction to the jury. In *Elrod v. Burns,* 427 U.S. 347, 359, 96 S.Ct. 2673, 2682, 49 L.Ed.2d 547 (1976), the Supreme Court said that "(p)atronage practice falls squarely within the prohibitions of *Keyishian* and *Perry.*" Four years later in *Branti v. Finkel,* 445 U.S. 507, 520, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980), the Supreme Court cited with favor the language of the district court, which raised the "propriety of political considerations entering into the selection (process)", and set down the following test:

(T)he question is whether the *hiring* authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved. *Id.* at 518, [100 S.Ct. at 1294] (emphasis added).

Thus, unless defendants can prove that they were honestly convinced that party affiliation is an appropriate qualification for janitor, they should have known that questioning applicants for janitor about party registration would violate the constitutional rights of the applicants. Although defendants claim they had never heard of *Elrod* and *Branti*, absent extraordinary circumstances, this is no excuse. As the Supreme Court said in *Harlow v. Fitzgerald*, 457 U.S. 800, 818–819, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 1396 (1982):

> If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

The Court concludes that the law was clear. Hiring or firing of janitors based on party affiliation is a practice clearly within the strictures placed on patronage by the Supreme Court as early as 1976, eight years before plaintiff applied for the job in question.

Plaintiff seeks a directed verdict on the qualified immunity question. The Court denied this motion so the jury can decide whether the facts of the case involved extraordinary circumstances that might excuse defendants' ignorance of the law. *Harlow* at 819, 102 S.Ct. at 2739. Nevertheless, the Court is convinced that defendants' requested good faith instructions are much too broad, and thus crafted jury instructions 14, 16, and 17 (copies attached to Order), based on a close reading of *Elrod*, *Branti*, and *Harlow*. The Court is convinced that these instructions, and not the ones submitted by the parties, contain a correct statement of the law of qualified immunity. Only if defendants meet these standards can they sustain a good faith defense.

Therefore, for the reasons set forth above, it is

ORDERED that defendants' motions to dismiss or for a directed verdict, and requests for specific jury instructions be, and the same hereby are, denied. It is further

ORDERED that plaintiff's motions for a directed verdict be, and the same hereby are, denied.

### JURY INSTRUCTION NO. 14

You are instructed that under the federal laws in existence at the time of the events that are the subject matter of this action, the First Amendment to the United States Constitution prohibited, and still prohibits, the consideration of the political affiliation of an applicant for public employment, unless the job applied for is one for which party affiliation is an appropriate requirement for the effective performance of that job. Such federal, Constitutional, laws are the supreme law of the land, and of course, supersede any inconsistent state laws, statutes or policies.

In deciding whether the job of janitor is such a position, you may consider whether it is a policy-making position. A policy-making position is one in which the employee's responsibilities are not well defined, and have a broad scope. In determining whether a position involved policy-making, you should consider whether the employee acts as an adviser or formulates plans for the implementation of broad goals.

If you find that defendants did consider plaintiff's party affiliation, or the lack thereof, then you must decide whether defendants, by a preponderance of the evidence, have demonstrated that party affiliation is an appropriate requirement for the effective performance of a janitor for the Wyoming House of Representatives.

### JURY INSTRUCTION NO. 16

Everyone is required to know what the law is and to act according to the law. Thus, a reasonably competent public official is presumed to know the law governing his or her conduct. If someone engages in an activity which violates the law, that person is responsible for his actions whether he intended to violate the law or not.

In order to find in favor of the plaintiff in the case, it is not necessary to find that the defendants had the specific intent to violate his constitutional rights.

JURY INSTRUCTION NO. 17

Ordinarily, if an official reasonably believed that he or she was acting within the law, and acted in good faith on the basis of this belief, then his or her reasonable belief and good faith action would constitute a defense to a claim for a civil rights violation.

If such an official claiming to have so acted, claims extraordinary circumstances, and further can prove, by a preponderance of the evidence, that because of these extraordinary circumstances he or she neither knew, nor should have known, the relevant Constitutional standard, only then may you sustain such a good faith defense.

You are further instructed that the Court is not aware of any provision in the Wyoming Constitution or in the Wyoming statutes which permits or authorizes the employment of non-policy-making legislative staff members upon a partisan political basis.