SUTTON, Circuit Judge,
concurring in part and dissenting in part.
I agree with one aspect of the majority’s decision (its rejection of the merits of this appeal) but not the other (its conclusion that the Rooker-Feldman doctrine strips the federal courts of jurisdiction to hear the case).
In eighty-six years, the Supreme Court has enforced the Rooker-Feldman limit on the jurisdiction of the federal courts just twice. See Dist. of Columbia Ct. of App. v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The Court’s most recent applications of the doctrine suggest that may be it — that, if the party’s name is not Rooker or Feldman, or if the case does not present a virtually identical challenge, it is unlikely that the doctrine strips the federal courts of jurisdiction to hear the claim. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 287, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005) (“Since Feld-man, this Court has never applied Rooker-Feldman to dismiss an action for want of jurisdiction.”); see also Lance v. Dennis, 546 U.S. 459, 464, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006); id. at 468, 126 S.Ct. 1198 (Stevens, J., dissenting on non-Rook-er-Feldman grounds) (stating Exxon-Mobil “finally interred the so-called ‘Rooker-Feldman doctrine’ ”).
The idea behind Rooker-Feldman is that 28 U.S.C. § 1257, the statute that gives the United States Supreme Court authority to review final decisions of the state courts, by implication denies federal district courts jurisdiction — and federal courts of appeals jurisdiction — over challenges to state-court judgments. See Exxon, 544 U.S. at 283, 125 S.Ct. 1517. If a party wishes to challenge a state-court judgment, it must seek review in the U.S. Supreme Court, not in the federal district courts. Id. In Exxon Mobil, the Court confined the Rooker-Feldman doctrine to a “narrow ground,” namely “cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those claims.” Id. at 284, 125 S.Ct. 1517. Smith’s claims do not occupy this “narrow ground.”
Invoking substantive and procedural due process, Smith complains that Michigan has denied him access to DNA evidence, *18 which implicates his “liberty interest in demonstrating his innocence with new evidence under state law,” Dist. Atty’s Office for the Third Judicial Dist. v. Osborne, — U.S. —, 129 S.Ct. 2308, 2319, 174 L.Ed.2d 38 (2009). Smith’s substantive due process challenge does not satisfy Rooker-Feldman’s requirements. He asserts a constitutional right to re-test evidence from his trial, using then-unavailable DNA testing techniques — a right the State of Michigan refuses to grant him. The state-court judgment, however, did not create or cause this injury; the State of Michigan (through its prosecutors) did. The state court “simply ratified, acquiesced in, or left unpunished” the State’s refusal to allow him access to new DNA testing. McKithen v. Brown, 481 F.3d 89, 98 (2d Cir.2007) (internal quotation marks omitted). Rooker-Feldman does not cover this substantive due process claim, and that by itself shows that the district court (and we) have jurisdiction over this case.
Smith’s procedural due process challenge also exceeds Rooker-Feldman’s limited grasp. Fairly construed, Smith’s pro se papers present an as-applied challenge to the adequacy of Michigan’s procedures for obtaining post-conviction access to DNA and to the actions of the Wayne County Prosecutor’s Office in applying those procedures, not a challenge to the state-court judgment itself. See R.1 ¶¶ 42, 44-45. Osborne explicitly contemplated this type of challenge in DNA-access cases, see Osborne, 129 S.Ct. at 2322, and I doubt the Court invited what Rooker-Feldman prevents.
While I cannot embrace the majority’s jurisdictional rulings, I agree with much of its alternative ruling on the merits. Under Osborne, Smith has no substantive due process right to access evidence from his criminal trial and subject it to DNA testing. See id. And his procedural due process claim fares no better because Michigan provides a more comprehensive procedure for accessing evidence for DNA testing than the Alaska scheme upheld in Osborne. See id. at 2320-22; see also Mich. Comp. Laws § 770.16. It is not true, however, that sovereign, prosecutorial or judicial immunity “likely” immunizes the defendants from the forward-looking injunctive relief Smith seeks even if he had a meritorious claim. Maj. Op. at 15-16; see also R.l at 11. These doctrines shield officials from damages suits, not forward-looking injunctions. See Pulliam v. Allen, 466 U.S. 522, 541-42, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984) (judicial immunity); Sup. Ct. of Va. v. Consumers Union of the United States, Inc., 446 U.S. 719, 737, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980) (prosecutorial immunity); Ex parte Young, 209 U.S. 123, 159-60, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (sovereign immunity).