**ANONYMOUS, Plaintiff,**

**v.**

**Chief Judge Judith S. KAYE, and Associate Judges Joseph Bellacosa, Carmen Beauchamp Ciparick, Howard A. Levine, Richard Simons, George Bundi Smith, and Vito J. Titone Individually and in their Official Capacity as Judges of the Court of Appeals of the State of New York, New York Board of Law Examiners and its Members Individually and in their Official Capacity, New York Rules for Admission to the Bar 22 NYCRR 520 et seq., Rules of the New York State Board of Law Examiners § 6000 et seq.; Chief Justice Wilentz, Justices Clifford, Handler, Pollock, O'Hern, Garibaldi, Stein, Individually and in their Official Capacity as Judges of the Supreme Court of the State of New Jersey, New Jersey Rules for Admission to the Bar NJR 1:21 et seq.; Deborah T. Poritz, Individually and in her Official Capacity as Former Attorney General of the State of New Jersey; New Jersey Court Rule**

132

4:30A; New Jersey Court Rule 2:15–20; Seton Hall University School of Law, a Corporation of the State of New Jersey, the Board of Regents of Seton Hall University, the Trustees of Seton Hall University, the Trustees of Seton Hall University School of Law, Dean Ronald R. Riccio, Professor Carol R. Goforth, Professor D. Michael Risinger, Michael Zimmer, Individually and in their Official Capacities; the American Bar Association, Defendants.

No. 97–CV–1064.

United States District Court,
N.D. New York.

Dec. 15, 1997.

Michael Barth, Liberty Corner, NJ, pro se.

Dennis C. Vacco, Attorney General of New York, Darren O'Connor, Asst. Atty. General, Albany, NY, for defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

This bizarre civil rights case has a long and convoluted history. Plaintiff is a New Jersey resident who has sought to take the New York State Bar Exam. Plaintiff's application to take the New York State Bar Exam was denied by the New York State Board of Law Examiners because Plaintiff's law school, Seton Hall University School of Law ("Seton Hall"), refused to forward a "Law School Certificate of Attendance" and a certification of the applicant's handwriting, which are required to take the exam. Seton Hall allegedly refused to provide the necessary certifications because Plaintiff failed to satisfy the residency requirements of the school for graduation.

The following facts are taken from a decision in a related case that Plaintiff filed in the Southern District of New York. *See Anonymous v. Kaye,* 1995 WL 617795 (S.D.N.Y.1995), *aff'd,* 104 F.3d 355 (2d Cir. 1996). Apparently, Plaintiff was a night student at Seton Hall. In the summer of 1992, a Seton Hall Professor determined that Plaintiff had plagiarized on a take-home final exam. The Professor reported the plagiarism to Associate Dean Michael J. Zimmer. Zimmer met with Plaintiff and determined that Plaintiff would receive a failing grade in the class and would be suspended from the law school for one year. Plaintiff appealed to the law school's Probation and Grievance Committee, which upheld the determination that Plaintiff had plagiarized but recommended that the suspension be re-examined. Dean Riccio decided not to implement the suspension.

In August of 1993, Plaintiff sued Zimmer for defamation in the Superior Court of New Jersey, Law Division, Somerset County. Plaintiff alleged that Zimmer's letter to

Plaintiff, stating the findings of plagiarism, was defamatory. Plaintiff's lawsuit was based on the premise that Plaintiff should not have been disciplined for plagiarism. Plaintiff did not sue Riccio or Seton Hall at that time. On June 30, 1994, the Superior Court granted Zimmer summary judgment on his claims. Plaintiff appealed that judgment, which was affirmed. *See Barth v. Zimmer,* No. A–6632–93T2 (N.J.Super.Ct.App.Div. March 24, 1995).

In 1994, Plaintiff sued many of the same defendants named here in the Southern District of New York. On July 25, 1994, Judge Keenan denied Plaintiff's motion for a preliminary injunction allowing him to take the July 1994 New York Bar exam. *See Anonymous v. Kaye,* 1994 WL 389157 (S.D.N.Y. 1994). On October 19, 1995, Judge Keenan dismissed the action before him as against Judges Kaye, Bellacosa, Ciparick, Levine, Simons, Smith, and Titone for improper venue. *See Anonymous v. Kaye,* 1995 WL 617795, at *1. Judge Keenan also dismissed Plaintiff's complaint against Justices Wilentz, Clifford, Handler, Pollock, O'Hern, Garibaldi, and Stein of the New Jersey Supreme Court for lack of personal jurisdiction and against Seton Hall University School of Law and Dean Ronald R. Riccio on res judicata grounds. *Id.* Plaintiff appealed the judgment, which was affirmed via summary order. *Anonymous v. Kaye,* 104 F.3d 355 (2d Cir.1996).

Plaintiff's Complaint contains twenty-eight causes of action. Defendants include, *inter alia,* seven judges on the New York Court of Appeals, seven justices on the New Jersey Supreme Court, the former Attorney General for the State of New Jersey, Plaintiff's former law school and law school professors, and the American Bar Association. Plaintiff's rambling Complaint alleges violations of his constitutional rights to interstate travel, due process, and equal protection, as well as RICO violations, conspiracy, injury to reputation, breach of contract, malicious prosecution, intentional infliction of emotional distress, negligence, and antitrust violations. Plaintiff seeks damages "in an amount not less than seven billion dollars."

The present motion to dismiss has been brought by the New York State Attorney General's Office on behalf of the Judges of the New York Court of Appeals, the New York State Board of Law Examiners and its members, the "New York Rules for Admission to the Bar 22 NYCRR 520 et seq.," and the "Rules of the New York State Board of Law Examiners § 6000 et seq." (hereinafter collectively referred to as "the New York Defendants").

## II. DISCUSSION

Federal Rule of Civil Procedure 12(b)(6) provides that a cause of action shall be dismissed if the complaint fails "to state a claim upon which relief can be granted." In analyzing a motion to dismiss, the facts alleged by the plaintiff are assumed to be true and must be liberally construed in the light most favorable to the plaintiff. *See, e.g., Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir. 1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). While a court need not accept mere conclusions of law, a court should accept the pleader's description of what happened along with any conclusions that can reasonably be drawn therefrom. *See Murray v. City of Milford,* 380 F.2d 468 (2d Cir.1967).

Furthermore, when a party makes a Rule 12(b)(6) motion to dismiss, a court will limit its consideration to the facts asserted on the face of the complaint. *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989). A complaint will not be dismissed for failure to state a claim unless it appears, beyond a doubt, that the plaintiff can prove no set of facts that would entitle her to relief. *See Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127 (N.D.N.Y.1990).

With this standard in mind, the Court will address the sufficiency of Plaintiff's Complaint.

### A. Eleventh Amendment Immunity

At this point in the history of our republic, it is clear that principles of federalism limit this Court's jurisdiction. For example, the Eleventh Amendment bars most claims against a state or an agency of the state in federal court absent either waiver of immunity and consent to suit by the state, or

abrogation of constitutional immunity by Congress. *See, e.g., Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); *Welch v. Texas Department of Highways and Public Transp.,* 483 U.S. 468, 471, 107 S.Ct. 2941, 2945, 97 L.Ed.2d 389 (1987); *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 237–38, 105 S.Ct. 3142, 3145–46, 87 L.Ed.2d 171 (1985). A suit against a state official is regarded as one against the state itself when the relief sought against the official would operate against the state. *Pennhurst,* 465 U.S. at 96–99, 104 S.Ct. at 906–08. In addition, a federal court may not grant relief, whether prospective or retroactive, against state officials on the basis of state law violations. *Dube v. State University of New York,* 900 F.2d 587, 595 (2d Cir.1990); *Jungels v. State University College of New York,* 922 F.Supp. 779, 784 (W.D.N.Y.1996), *aff'd,* 112 F.3d 504 (2d Cir.1997).

Accordingly, all of Plaintiff's claims against the New York State Board of Law Examiners, the judges of the New York Court of Appeals in their *official* capacities, and the members of the New York State Board of Law Examiners in their *official* capacities are barred by the Eleventh Amendment and must be dismissed.

### B. Individual Immunity

 The doctrine of judicial immunity has been an established principle in our jurisprudence since *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871). In *Bradley,* the Court wrote that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." 80 U.S. at 351. Thus, "a judge . . . is entitled to absolute judicial immunity from damages liability for acts performed in his judicial capacity." *Green v. Maraio,* 722 F.2d 1013, 1016 (2d Cir.1983)

(*citing Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980)); *see also Stump v. Sparkman,* 435 U.S. 349, 360, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978). Furthermore, judges are entitled to absolute legislative immunity for actions relating to the promulgation of disciplinary rules. *See Supreme Court of Virginia v. Consumers Union of the United States, Inc.,* 446 U.S. 719, 734, 100 S.Ct. 1967, 1975–76, 64 L.Ed.2d 641 (1980).

Here, there is no allegation that the judges of the New York Court of Appeals acted outside their authority as judges on New York's highest court. Accordingly, they are entitled to absolute judicial immunity and Plaintiff's claims against them in their individual capacities must also fail.

 As to the members of the New York State Board of Law Examiners, they may be entitled to qualified immunity. In this circuit,

> [p]ublic officials are entitled to qualified immunity from claims for damages if (1) their conduct did not violate federal statutory or constitutional rights that were clearly established at the time, or (2) it was objectively reasonable for them to believe their acts did not violate those rights. In determining whether a right was clearly established, we consider (1) whether the right in question was defined with 'reasonable specificity', (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question, and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Brown v. City of Oneonta,* 106 F.3d 1125, 1130–31 (2d Cir.1997) (citations and internal quotation marks omitted).[1]

 Under either prong of this standard, it is clear that the members of the New York State Board of Law Examiners are entitled

---

1. As the Second Circuit recently noted:

 The doctrine of qualified immunity attempts to balance the strong policy of encouraging the vindication of federal civil rights by compensating individuals when those rights are violated, with the equally salutary policy of attracting capable public officials and giving them the

 scope to exercise vigorously the duties with which they are charged, by relieving them from the fear of being sued personally and thereby made subject to monetary liability.
 *Rodriguez v. Phillips,* 66 F.3d 470, 475 (2d Cir. 1995).

to qualified immunity. First, their conduct did not violate federal statutory or constitutional rights that were clearly established at the time. "A state can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the Bar, [provided the] qualification [has] a rational connection with the applicant's fitness or capacity to practice law." *Schware v. Board of Bar Examiners*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957).[2] Second, even if the complained of conduct did violate clearly established rights, it was objectively reasonable for the Board of Law Examiners to believe that their acts did not violate those rights. *See, e.g., Shapiro v. Cooke*, 552 F.Supp., 581, 585–89 (N.D.N.Y.1982), *aff'd*, 702 F.2d 46 (2d Cir.1983) (dismissing challenge to the constitutionality of 22 NYCRR § 520.9(a), which sets forth the standards for admission to the New York State bar without examination, as not violative of equal protection, right to travel, and privileges and immunities clause).

For the foregoing reasons, the Members of the New York State Board of Law Examiners are entitled to qualified immunity and Plaintiff's claims against them in their individual capacities must be dismissed.

## C. Antitrust Violations

■ As to Plaintiff's antitrust claims against the New York Defendants, these claims are without merit. In *Hoover v. Ronwin*, 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984), the plaintiffs, who had failed the Arizona Bar Examination, brought suit against the members of the Arizona Supreme court Committee on Examinations and Admissions for alleged violations of the Sherman Act. The *Hoover* Court determined that the actions of the committee members could not be divorced from the actions of the Arizona Supreme Court, noting that the members were appointed by the Arizona Supreme Court and the court "retained strict supervisory powers and ultimate full authority over its actions." *Id.* at 572, 104 S.Ct. at 1997. The Court concluded that the conduct challenged was "in reality that of the Arizona Supreme Court," and therefore, the committee members were absolutely immune from antitrust liability. *Hoover*, 466 U.S. at 573, 104 S.Ct. at 1997.

Here, as in *Hoover*, the New York State Board of Law Examiners acts pursuant to the rules adopted by the New York Legislature and the New York Court of Appeals. For example, New York Judiciary Law § 53 states that "[t]he [Court of Appeals] shall prescribe rules providing for a uniform system of examination of candidates for admission to practice as attorneys and counselors, which shall govern the state board of law examiners in the performance of its duties." N.Y. Judiciary Law § 53(3) (McKinney Supp. 1997).[3] Because the Court of Appeals re-

---

**2.** Consistent with this deferential standard, courts have upheld a variety of bar-admission restrictions. *See, e.g., Nordgren v. Hafter*, 789 F.2d 334, 339 (5th Cir.1986) (upholding Mississippi rule denying bar admission to graduates of out-of-State, non-ABA-accredited law schools, even though similar restriction did not apply to graduates of in-State, non-ABA-accredited schools); *Jones v. Board of Comm'rs*, 737 F.2d 996, 1001–02 (11th Cir.1984) (upholding Alabama rule limiting to five the number of times an individual may sit for the bar examination); *Lowrie v. Goldenhersh*, 716 F.2d 401, 409–10 (7th Cir.1983) (upholding Illinois rule allowing admittance of foreign-licensed attorneys only if applicant has resided and actively practiced law in the outside jurisdiction for five of the seven years immediately preceding application).

**3.** New York's Judiciary Law states, in relevant part:

**Rulemaking power of court of appeals as to admission of attorneys and counselors**

1. The court of appeals may from time to time adopt, amend, or rescind rules not inconsistent with the constitution or statutes of the state, regulating the admission of attorneys and counselors at law, to practice in all the courts of record of the state.

2. The court may make such provisions as it shall deem proper for admission to practice as attorneys and counselors, of persons who have been admitted to practice in other states or countries.

3. The court shall prescribe rules providing for a uniform system of examination of candidates for admission to practice as attorneys and counselors, which shall govern the state board of law examiners in the performance of its duties. The court shall not by its rules cause to be barred from examination or, upon successful completion of the examination process, subsequent admission to the state bar, provided he or she shall otherwise meet any requirements for admission,

tains strict supervisory powers and ultimate full authority over the actions of the Board of Law Examiners, the Board is exempt from antitrust litigation. As the Second Circuit has instructed:

> In *Hoover v. Ronwin,* the Court stated that when the anticompetitive conduct is undertaken by the sovereign itself, for example, through its legislature or its supreme court, that activity is *ipso facto* immune from federal antitrust laws. No further inquiry need be made.

*Cine 42nd Street Theater Corp. v. Nederlander Organization, Inc.,* 790 F.2d 1032, 1041 (2d Cir.1986) (*citing Hoover,* 466 U.S. at 567, 104 S.Ct. at 1995) (internal citation omitted).

### D. Rules for Admission to the Bar

Finally, Plaintiff brings claims against the "New York Rules for Admission to the Bar 22 NYCRR 522 et seq.," and the "Rules of the New York State Board of Law Examiners § 6000 et seq." However, Plaintiff does not identify the specific provisions being challenged, nor is it clear from the Complaint what causes of action are implicated. Thus, these claims must be dismissed.

■ Although a federal court must construe a *pro se* plaintiff's inartful pleading liberally, *see, e.g., Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988), this does not mean that a *pro se* plaintiff can completely disregard the pleading requirements of the Federal Rules of Civil Procedure. *See Tomeo v. Allied Signal,* 1997 WL 727563, *2 (N.D.N.Y. 1997). This Circuit has established that "a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation ... fails to state a claim under Rule 12(b)(6)." *Martin v. N.Y. State Dept. of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978) (per curiam); *see also Fonte v. Board of Managers of Continental Towers Condominium,*

848 F.2d 24, 25 (2d Cir.1988) ("If a civil rights complaint is to survive a motion to dismiss, it must make specific factual allegations indicating a deprivation of rights."). As the Second Circuit has stated, a "litany of general conclusions that shock but have no meaning" are not sufficient to withstand a Rule 12(b)(6) motion. *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).

### III. CONCLUSION

In summary, Defendants' Motion to Dismiss is GRANTED in its entirety. Plaintiff's Complaint is DISMISSED as to defendants Chief Judge Kaye, and Associate Judges Bellacosa, Ciparick, Levine, Simons, Smith, and Titone in both their individual and official capacities, the New York Board of Law Examiners, the members of the New York Board of Law Examiners individually and in their official capacities, the New York Rules for Admission to the Bar 22 NYCRR 520 *et seq.,* and the Rules of the New York State Board of Law Examiners § 6000 *et seq.*

**IT IS SO ORDERED.**

---

any person who is currently admitted to practice in the jurisdiction of another state and has received a degree from a law school which qualifies such person to practice law in such state, other than a law school which grants credit for correspondence courses, provided that such person has been engaged in the actual practice of law in the state in which they are admitted for no less than five years.

4. The rules established by the court of appeals, touching the admission of attorneys and counselors to practice in the courts of record of the state, shall not be changed or amended, except by a majority of the judges of that court. A copy of each amendment to such rules must, within five days after it is adopted, be filed in the office of the secretary of state.... N.Y. Judiciary Law § 53.