In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1923

SCOTT REEDER and the ILLINOIS POLICY INSTITUTE,

*Plaintiffs-Appellants*,

*v.*

MICHAEL J. MADIGAN, *et al*.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 14-CV-3041 — **Colin S. Bruce**, *Judge*.

ARGUED NOVEMBER 10, 2014 — DECIDED MARCH 11, 2015

Before WOOD, *Chief Judge*, and ROVNER and HAMILTON, *Circuit Judges*.

WOOD, *Chief Judge*. In March 2013, Scott Reeder received a letter from Rikeesha Phelon, the press secretary for Illinois Senate President John J. Cullerton. The letter bore bad news: it informed Reeder that his request for Senate media credentials as a writer for the Illinois Policy Institute (IPI) was denied because IPI was registered as a lobbying entity in Illinois. Phelon explained that Senate rules required this deci-

sion because the rules forbid credentials for anyone associated with a lobbying entity. Undaunted, Reeder tried again in January 2014 to obtain media credentials from the Illinois House of Representatives and Senate. His status had changed, he argued, because IPI was no longer registered as a lobbyist. That change was not enough to satisfy the Senate. It took the position that IPI was still required to register as a lobbyist given its retention of a lobbying firm that employed the same staff and office space as IPI itself. It thus once again denied Reeder's application. The Illinois House responded in kind a few weeks later.

Reeder and IPI (to whom we refer collectively as Reeder) responded with this lawsuit against Illinois House Speaker Michael Madigan and Illinois Senate President John Cullerton, along with their press secretaries. Invoking 42 U.S.C. § 1983, Reeder contended that the defendants had violated his First Amendment right to freedom of the press, as well as his rights to due process and equal protection. The defendants moved to dismiss Reeder's claims on the basis of absolute legislative immunity. The district court granted that motion, concluding that the denial of credentials to Reeder qualified as legislative activity and thus entitled the defendants to immunity. We agree with this conclusion and affirm the district court's judgment.

## I

The following account of the facts, which we have taken from the complaint and its exhibits, is presented in the light most favorable to Reeder, as this case comes to us on a motion to dismiss. See *CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*, 769 F.3d 485, 487 (7th Cir. 2014).

Reeder is an experienced reporter. Since 1988 he has worked for newspapers in Texas, Iowa, and Nevada. He served for ten years as statehouse bureau chief for an Illinois newspaper group. In 2009 he went to work for the Franklin Center for Government and Public Integrity, where he served as a reporter and editor. Finally, in 2012 Reeder began his job at the Illinois News Network (INN), which is part of IPI. At INN, Reeder says, he "writes his news commentary from a perspective that favors free markets and limited government."

IPI was registered as a lobbyist in Illinois through 2013. At some point in late 2012 or early 2013, Reeder requested media credentials from both Houses of the Illinois General Assembly. The credentials he sought would allow him access to press boxes on the floor of each chamber. Access to this area, Reeder explains, confers considerable advantages for journalists: they have the use of seats and desks; they can take photographs from advantageous angles; they may use the services of pages to deliver requests to legislators on the floor; and they have a guaranteed seat on days when the public galleries are full.

As we noted earlier, both Houses denied Reeder's application. Phelon explained in her March 2013 letter that the Senate's media guidelines incorporate Senate Rule 4-3(d), which disallows access to the floor of the Senate for any "person who is directly or indirectly interested in defeating or promoting any pending legislative measure, if required to be registered as a lobbyist." The letter also reminded Reeder that the Senate's media guidelines require credential applicants to operate independently of industries and institutions and to refrain from lobbying. Phelon acknowledged that the

Illinois Lobbyist Registration Act, 25 ILCS 170/1 *et seq.*, gen-
erally exempts newspaper employees from lobbyist registra-
tion requirements, but there is an exception for people who
receive compensation "from some source other than the bo-
na fide news medium for the purpose of influencing execu-
tive, legislative, or administrative action." *Id.* 170/3(a)(2).
These rules required the rejection of Reeder's application for
credentials. Reeder received similar news in a conversation
with Steve Brown, who was press secretary to the Speaker of
the Illinois House.

Reeder applied again for media credentials from the
House and Senate in January 2014. He explained to Brown
and Phelon through his attorney that IPI was not going to be
registering as an Illinois lobbyist in 2014. This meant (he as-
serted) that they could no longer deny him credentials based
on IPI's status as a lobbyist. Neither chamber was persuaded
that the change made any difference. Eric Madiar, chief legal
counsel and parliamentarian to President Cullerton, wrote
Reeder to explain why his office was again rejecting Reeder's
request for credentials.

Madiar observed that the people who were once IPI lob-
byists now lobbied for another entity, Illinois Policy Action.
That group, Madiar said, was responsible for advancing IPI's
interests in Springfield. IPI and Illinois Policy Action shared
offices in Chicago and Springfield, with the same phone
numbers and the same employees listed for both. "In other
words," Madiar wrote, "Illinois Policy Action serves as the
Institute's lobbyist, and the Institute is Policy Action's client."
Madiar concluded that Reeder was still ineligible for a media
credential. Madiar also noted that the Illinois News Net-
work, as part of IPI, was not "owned and operated inde-

pendently of any industry, institution, association, or lobbying organization" and thus IPI should have registered as an Illinois lobbyist for 2014, given its relationship with Illinois Policy Action. In light of all this, Madiar concluded, "it is difficult to fathom how you [Reeder] operate independently of the Institute per the Senate Media Guidelines."

The following month Reeder's attorney received a similar letter citing House rules and the Lobbyist Registration Act from the counsel to the Speaker of the Illinois House. The day after this letter arrived, Reeder filed his lawsuit.

## II

### A

The sole issue in this appeal is whether Speaker Madigan, President Cullerton, and their aides are entitled to absolute legislative immunity from suit for their denials of press credentials to Reeder. The idea of legislative immunity arises from the Speech or Debate Clause of Article I of the Constitution, which states that with regard to members of Congress, "for any Speech or Debate in either House, they shall not be questioned in any other Place." The protections of this clause have long been held to extend beyond mere discussion or speechmaking on the legislative floor. See, *e.g.*, *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880) ("It would be a narrow view of the constitutional provision to limit it to words spoken in debate."). Rather, the Clause's protections apply to legislators' actions that constitute "legitimate legislative activity." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). The Supreme Court has held that this category encompasses acts that are

> an integral part of the deliberative and com-

> municative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House.

*Gravel v. United States*, 408 U.S. 606, 625 (1972). The inquiry into the nature of legislative activity is a functional one. See *Rateree v. Rockett*, 852 F.2d 946, 950 (7th Cir. 1988).

Just as the Speech or Debate Clause extends beyond literal speech and debate, so too does it apply to others besides members of the United States Congress. Legislators at the state, regional, and municipal levels are also entitled to absolute immunity for their legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 53–54 (1998). The same can be true for actors on the legislative stage who are not elected officials themselves. The Supreme Court left little doubt about this in *Gravel*, where it stated that the "Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself." 408 U.S. at 618. This represented a shift in emphasis from the Court's cases only a few years earlier, when it observed that legislative immunity is "less absolute, although applicable, when applied to officers or employees of a legislative body, rather than to legislators themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (per curiam); see also *Powell v. McCormack*, 395 U.S. 486, 506 (1969) (holding legislators immune from suit but not House sergeant at arms, doorkeeper, or clerk). Since *Gravel*, the Court has confirmed that legislative immunity applies to legislative committee staff in addition to legislators themselves.

See *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 507 (1975); *Doe v. McMillan*, 412 U.S. 306, 312–13 (1973).

B

These cases support the conclusion that the activity in question here—the decision whether to confer media credentials on an applicant—was legislative in nature, and integrally so. As the Supreme Court explained in *Gravel*, legislative immunity extends to actions that are "necessary to prevent indirect impairment of such deliberations." 408 U.S. at 625 (internal quotation marks omitted). The rules that the defendants invoked in their decision with respect to Reeder demonstrate that his exclusion from the press boxes on the floor of the Assembly is designed to avoid the impairment of deliberations there. Illinois House Rule 30(d) says that no person "required to be registered as a lobbyist ... shall be allowed access to the floor of the House at any time during the session." Illinois Senate Rule 4-3(d) says the same thing. The Illinois Lobbyist Registration Act exempts certain journalists from the requirement to register with the state as lobbyists, but not those working for publications "owned by or published by ... not-for-profit corporations engaged primarily in endeavors other than dissemination of news." 25 ILCS 170/3(a)(2).

These rules reflect a judgment on the part of the Illinois General Assembly that certain persons or entities engaged in reporting must register as lobbyists and work under the rules that apply to lobbyists, including the rule forbidding presence on the floor. The rules spell out why this prohibition exists: these people are "directly or indirectly interested in defeating or promoting any pending legislative measure." It can easily be inferred from the Lobbyist Registration Act,

along with the House and Senate rules, that the legislature believes that the presence of lobbyists risks an impairment of deliberations. The policy therefore has as its basis an important legislative purpose. The IPI is plainly an advocacy organization, and even though it did not register as a lobbyist in 2014, both the House and Senate determined that it should have. It is hardly a stretch to characterize control of access to the legislative floor as a core legislative function.

Reeder's primary argument to the contrary—that the action to deny him credentials was administrative in nature, not legislative—finds little support in the case law or in the slim record before us. Reeder's conception of the scope of legislative immunity is too restrictive. He argues, for example, that denial of media credentials is unlike speaking, debating, voting on the legislative floor, or conducting a legislative investigation. That set of activities, he assumes, exhausts the possibilities for legislative activity, and so anything not within the set must be administrative. Yet the Supreme Court has never held that the Speech or Debate Clause is so limited. Although it has stated that the Clause does not confer immunity upon absolutely everything done in the legislature, it also has said that the Clause should receive "a practical rather than a strictly literal reading." *Hutchinson v. Proxmire*, 443 U.S. 111, 124 (1979).

The Illinois legislature's decision to exclude lobbyists and those associated with lobbying groups from its legislative floor was enacted to prevent interference with the same core legislative activities Reeder lists—voting, conferring, making speeches, and so on. These activities are all integral to the legislative endeavor. A contrary rule would make it nearly impossible for a legislature to function, as it would potential-

ly subject legislators and their aides to liability for every floor-access decision they make. It is not surprising, therefore, that the First and District of Columbia Circuits agree with us. See *Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 632 (1st Cir. 1995) (holding "it is beyond serious dispute" that denying press credentials based on need to keep lobbyists off House floor is legislative); *Consumers Union of U.S., Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341 (D.C. Cir. 1975).

Nor are we persuaded that *Powell v. McCormack*, on which Reeder relied extensively at oral argument, requires the opposite result. Briefly, *Powell* concerned the decision of the U.S. House of Representatives to disallow one of its members (Adam Clayton Powell, Jr.) from taking his seat. Powell sued several of his House colleagues as well as the doorkeeper, sergeant-at-arms, and clerk for barring him from the chamber. Relevant to our purposes, the defendants asserted that the Speech or Debate Clause provided them with immunity from Powell's suit. The Supreme Court adopted a more nuanced rule. Although it held that the Clause required that legislators be free from the burden of defending themselves, it did not similarly protect the specified House employees. See *Powell*, 395 U.S. at 504–06.

Yet the Court in *Powell* explicitly declined to consider the question whether the decision to exclude Powell was legislative in nature. I*d.* at 501–02. Moreover, since *Powell* the Court has definitively rejected the notion that legislative aides (as opposed to staff such as the doorkeeper or sergeant-at-arms) are not entitled to the same degree of immunity as legislators themselves in cases after *Powell*. See, *e.g.*, *Gravel*, 408 U.S. at 616–17 (noting that "the day-to-day work of such aides is so

critical to the Members' performance that they must be treated as the latter's alter egos; and that if they are not so recognized, the central role of the Speech or Debate Clause … will inevitably be diminished and frustrated"). *Gravel* compels us to find that the immunity that protects Cullerton and Madigan from suit in this case extends to Phelon and Brown, their press secretaries. It would be a mistake to read too much into *Powell* in any event, because it raised the exceedingly unusual situation of a duly elected member of Congress who was barred from taking his own seat. Reeder's access to the floors of the Illinois Senate and House raises a more mundane matter that was always subject to the approval of the legislature.

In a less ambitious vein, Reeder also contends that the actions under review were not legislative because they represented mere enforcement of a rule, not its promulgation—a distinction that he believes the Supreme Court adopted in *Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719 (1980). But the Court in *Supreme Court of Virginia* made no such pronouncement. The case dealt in part with the Virginia Supreme Court's authority to initiate disciplinary proceedings against attorneys for alleged violations of rules the court itself promulgated. The promulgation of rules is entitled to legislative immunity, the U.S. Supreme Court noted, but the Virginia Supreme Court's power to enforce those rules via disciplinary proceedings was prosecutorial in nature. Prosecutors, the Court continued, "enjoy absolute immunity from damages liability" but not from section 1983 injunctive suits, because "they are the state officers who are threatening to enforce and who are enforcing the law." *Id.* at 736. Thus the Virginia Supreme Court, like any prosecutor, did not enjoy absolute legislative immunity for its "enforce-

ment capacities." *Id.*

Reeder's argument falls flat because it does not take into account the *raison d'être* of the Court's decision in *Supreme Court of Virginia*. The defendants' decision to deny him credentials was nothing like a prosecution. It did not impose any kind of liability on him, nor did it deprive him of a license or permit. We agree with the First Circuit's conclusion that when "a legislative body adopts a rule … that bears upon its conduct of frankly legislative business, we think that the doctrine of legislative immunity must protect legislators and legislative aides who do no more than carry out the will of the body by enforcing the rule as a part of their official duties." *Harwood*, 69 F.3d at 631. Although it does not matter in light of our conclusion, the fact is that Reeder appears to be challenging both the promulgation and enforcement of the rules here. Even he appears to concede that his argument is meritless as applied to the promulgation of the rules.

Reeder also contends that federal legislators are entitled to a broader legislative privilege than their state counterparts have. In quoting *Supreme Court of Virginia* for this point, however, Reeder omits that the Supreme Court said this was true only "in criminal actions." 446 U.S. at 733. Admittedly, we skipped over that qualification in *Bagley v. Blagojevich*, 646 F.3d 378, 396–97 (7th Cir. 2011), although it was not dispositive in that case, nor is it in this one. There is no reason to find that legislators such as Speaker Madigan and President Cullerton along with their aides are entitled to lesser protection than their peers in Washington. See *Bogan*, 523 U.S. at 53–54 (extending the protections of legislative immunity to municipal legislators).

Several final matters require our attention. First, Reeder

makes a late attempt in his reply brief to raise a factual issue. He contends that the defendants have not adequately shown that media credentials actually permit journalists to affect floor proceedings in the General Assembly. Had the case gone further, Reeder argues, he could have presented evidence that the press boxes in Springfield have a separate entrance and "high partitions" between journalists and the rest of the floor, and so journalists using them have no special access to legislators. New contentions in a reply brief are disfavored, but Reeder's argument suffers from more fundamental problems. It requires far more of defendants than the law requires in order to be entitled to immunity. The Supreme Court has never held that those claiming legislative immunity must substantiate the rationales for their legislative actions with evidence. And it is an odd argument for Reeder to press, since if accepted, it would suggest that access he wants is of little or no value. We refrain from saying any more about it, since it was raised too late.

Second, Reeder insists that our approval of the district court's dismissal of his case will provide cover for the legislature to reject other credential requests for invidious reasons, such as the race or sex of the applicant. Yet he concedes that these risks exist whenever legislative immunity is invoked. He does not argue that any such thing happened here, nor does he explain why we should speculate about the proper way to resolve a hypothetical conflict between two different constitutional commands. We can safely save that issue for another day.

Finally, Reeder has not argued that *Ex parte Young,* 209 U.S. 123 (1908), overcomes the defendants' legislative immunity in this case. This omission is striking because the de-

fendants asserted in their brief that they are not responsible for the enforcement of the Lobbyist Registration Act, which is the source of the rules both Houses follow, and thus that no injunction under *Young* would be proper. Brief of Defendants-Appellees at 14–15 n.3. Reeder made no response to this argument in his reply brief, and so we need say no more about it.

### III

The defendants' decisions to deny press credentials to Reeder were inseparable from their core legislative activities. They were intimately related to the shared goal of the Illinois Senate and House to regulate access to the floors of the state House and Senate. The defendants are thus entitled to absolute legislative immunity from suit in this case, and we AFFIRM the judgment of the district court to this effect.