# United States Court of Appeals
## For the Eighth Circuit
_____

No. 23-1600
_____

In re: North Dakota Legislative Assembly; William R. Devlin; Senator Ray Holmberg; Senator Richard Wardner; Senator Nicole Poolman; Michael Nathe, Representative; Terry Jones, Representative; Claire Ness, Senior Counsel at the North Dakota Legislative Council,

*Petitioners*,
_____

Appeal from United States District Court
for the District of North Dakota - Eastern
_____

Submitted: April 17, 2023
Filed: June 6, 2023
_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.
_____

COLLOTON, Circuit Judge.

We consider here a petition for writ of mandamus filed by several current or former members of the North Dakota Legislative Assembly and a legislative aide. The petitioners seek relief from orders of the district court directing them to comply with subpoenas for documents or testimony in a civil case brought against the State of North Dakota. *See Turtle Mountain Band of Chippewa Indians v. Jaeger*, No. 3:22-0022 (D.N.D.). The underlying lawsuit alleges violations of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301(a). The plaintiffs seek to develop evidence of alleged "illicit motive" by legislators who enacted a redistricting plan for state

legislative districts. The petitioners argue that the discovery orders infringe on legislative privilege and that the subpoenas should be quashed.[*]

Three conditions must be satisfied for this court to issue a writ of mandamus. First, the party seeking the writ must have no other adequate means to attain the relief desired. Second, the petitioner must show that his or her right to relief is clear and indisputable. Third, this court must be satisfied that the writ is appropriate under the circumstances. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004). Mandamus is an appropriate remedy where a claim of privilege is erroneously rejected during discovery, because the party claiming privilege has no other adequate means to attain relief, and the enforcement of the discovery order would destroy the privilege. *See Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000); *In re Gen. Motors Corp.*, 153 F.3d 714, 715 (8th Cir. 1998).

---

[*]The plaintiffs issued a subpoena for testimony to former state representative William R. Devlin. They issued seven document subpoenas to current or former legislators and one legislative aide, seeking documents and communications regarding the following:

(1) Native Americans and/or Indian Reservations and the 2021 Redistricting Process or Maps.

(2) Tribal input, including regarding written submissions or verbal testimony from tribal representatives, with respect to the 2021 Redistricting Process or Maps.

(3) Redistricting criteria for the 2021 Redistricting Process or Maps.

(4) District 4, District 9, or District 15, and, where applicable, any subdistricts of these districts, including documents and communications regarding the applicability of the Voting Rights Act to these districts and subdistricts.

(5) Trainings provided to legislators in preparation for or as part of the 2021 Redistricting Process.

(6) The identity of map drawers in the 2021 Redistricting Process.

(7) Racial polarization or demographic studies conducted by the Redistricting Committee or Legislature as part of or in preparation for the 2021 Redistricting Process.

The petitioners rely on a claim of legislative privilege. State legislators enjoy a privilege under the federal common law that largely approximates the protections afforded to federal legislators under the Speech or Debate Clause of the Constitution. And a privilege that protects legislators from suit or discovery extends to their aides. *Gravel v. United States*, 408 U.S. 606, 616 (1972); *Reeder v. Madigan*, 780 F.3d 799, 804 (7th Cir. 2015). Although state legislators do not enjoy the same privilege as federal legislators in criminal actions, *United States v. Gillock*, 445 U.S. 360, 372-73 (1980), the Supreme Court otherwise has generally equated the legislative immunity to which state legislators are entitled to that accorded Members of Congress under the Constitution. *Sup. Ct. of Va. v. Consumers Union*, 446 U.S. 719, 733 (1980). In civil litigation, there is no reason to conclude that state legislators and their aides are "entitled to lesser protection than their peers in Washington." *Reeder*, 780 F.3d at 805; *see Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018). Legislative privilege, like legislative immunity, reinforces representative democracy by fostering an environment where public servants can undertake their duties without the threat of personal liability or the distraction of incessant litigation. *See Bogan v. Scott-Harris*, 523 U.S. 44, 52 (1998); *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011).

Legislative privilege applies where legislators or their aides are "acting in the sphere of legitimate legislative activity." *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951). When legislators are functioning in that sphere, the privilege is an "absolute bar to interference." *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975). The privilege "protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *United States v. Brewster*, 408 U.S. 501, 525 (1972). The bar to interference extends beyond immunity from liability to the compelled discovery of documents or testimony, because legislators "should be protected not only from the consequences of litigation's results but also from the burden of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (per curiam). This protection applies whether or not the legislators are

-3-

parties in a civil action: "A litigant does not have to name members or their staffs as parties to a suit in order to distract them from their legislative work. Discovery procedures can prove just as intrusive." *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988); *see Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181. The degree of intrusion is not material; "any probing of legislative acts is sufficient to trigger the immunity." *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 419 (D.C. Cir. 1995) (emphasis omitted).

The conditions for legislative privilege are plainly satisfied here. The plaintiffs in the underlying lawsuit seek documents and testimony from legislators and an aide concerning acts undertaken with respect to the enactment of redistricting legislation in North Dakota. The district court did not dispute that the acts were undertaken within the sphere of legitimate legislative activity. The acts are therefore privileged from inquiry. Absent a waiver of the privilege, the subpoenas should have been quashed based on legislative privilege.

We conclude that the district court's conclusion to the contrary was based on a mistaken conception of the legislative privilege. In its order enforcing the document subpoenas, the district court reasoned that legislative privilege did not apply because the subpoena sought communications between legislators and third parties. The legislative privilege, however, is not limited to a bar on inquiry into communications among legislators or between legislators and their aides. The privilege is not designed merely to protect the confidentiality of deliberations within a legislative body; it protects the functioning of the legislature more broadly. Communications with constituents, advocacy groups, and others outside the legislature are a legitimate aspect of legislative activity. The use of compulsory evidentiary process against legislators and their aides to gather evidence about this legislative activity is thus barred by the legislative privilege. *See Almonte v. City of Long Beach*, 478 F.3d 100, 107 (2d Cir. 2007); *Bruce v. Riddle*, 631 F.2d 272, 280 (4th Cir. 1980). The authority on which the district court relied for a narrower

understanding of the privilege has since been reversed on this basis. *See Jackson Mun. Airport Auth. v. Harkins*, 67 F.4th 678, No. 21-60312, 2023 WL 3333607, at *5 (5th Cir. May 10, 2023). The dissent endorses the district court's order requiring the production of "nonprivileged communications," but does not acknowledge that the order was premised on a mistaken conclusion that the legislative privilege affords no protection against discovery of communications between a legislator and third parties.

With respect to the order enforcing a subpoena for testimony from Representative Devlin, the district court did not simply consider whether the subpoena would inquire into acts within the legitimate legislative sphere, but instead applied a five-factor test akin to that used to determine the scope of the deliberative process privilege. The district court reasoned that redistricting legislation "presents a particularly appropriate circumstance for qualifying the state legislative privilege because judicial inquiry into legislative intent is specifically contemplated as part of the resolution of the core issue that such cases present." R. Doc. 71, at 3 (quoting *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 337 (E.D. Va. 2015)). The cited authority, in turn, relied on *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), where the Supreme Court addressed a challenge to restricting legislation based on the Equal Protection Clause of the Fourteenth Amendment. In that context, the Court said that "[i]n some extraordinary instances the members might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege." *Id*. at 268. The Court further observed that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government," and are "usually to be avoided." *Id*. at 268 n.18 (internal quotation omitted).

The potential for "extraordinary instances" in which testimony might be compelled from a legislator about legitimate legislative acts does not justify enforcing a subpoena for testimony in this case. Dicta from *Village of Arlington Heights* does not support the use of a five-factor balancing test in lieu of the ordinary rule that inquiry into legislative conduct is strictly barred by the privilege. Even where "intent" is an element of a claim, statements by individual legislators are an insufficient basis from which to infer the intent of a legislative body as a whole. *United States v. O'Brien*, 391 U.S. 367, 383-84 (1968); *Rosenstiel v. Rodriguez*, 101 F.3d 1544, 1552 (8th Cir. 1996). And here, the underlying case does not even turn on legislative intent. A claim under § 2 of the Voting Rights Act does not depend on whether the disputed legislative districts were adopted "with the intent to discriminate against minority voters," for the statute repudiated an "intent test." *Thornburg v. Gingles*, 478 U.S. 30, 43-44 (1986). Any exception to legislative privilege that might be available in a case that is based on a legislature's alleged intent is thus inapplicable. *See Am. Trucking Ass'ns, Inc. v. Alviti*, 14 F.4th 76, 88-89 (1st Cir. 2021). The dissent's proposal to order a deposition during which a legislator could "invoke legislative privilege" does not sufficiently appreciate that compulsory process constitutes a "substantial intrusion" into the workings of a legislature that must "usually be avoided." *Vill. of Arlington Heights*, 429 U.S. at 268 n.18; *see Lee*, 908 F.3d at 1188.

For these reasons, we grant in part the petition for writ of mandamus, and direct the district court to quash the subpoenas for petitioner Devlin to testify, and for petitioners Holmberg, Wardner, Poolman, Nathe, Devlin, and Ness to produce documents and other information. We deny the petition with respect to the subpoena for petitioner Jones to produce documents. The district court enforced that subpoena on the alternative ground that Jones waived his legislative privilege by testifying at a preliminary injunction hearing in another case concerning redistricting legislation. R. Doc. 72 at 5 & n.1; R. Doc. 63, at 5. The petitioners do not discuss or dispute the district court's conclusion of waiver, so we have no occasion to address it. But

Jones—having declined even to challenge an independent ground for the district court's order regarding his subpoena—has not demonstrated a clear and indisputable right to relief.

KELLY, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from the grant of mandamus relief in this case. The legislative petitioners have not shown that this "drastic and extraordinary" remedy is appropriate. Cheney, 542 U.S. at 380 (citation omitted). In my view, this case involves neither "a judicial usurpation of power" nor "a clear abuse of discretion" by the district court. Id. (cleaned up).

The subpoenas at issue here sought documents and communications from the legislative petitioners regarding allegations that the 2021 redistricting plan enacted by the North Dakota Legislature violated the Voting Rights Act. When the legislative petitioners objected, the plaintiffs, among whom include the Turtle Mountain Band of Chippewa Indians and Spirit Lake Nation (the Tribes), moved to enforce the subpoenas. From there, the district court identified three categories of relevant evidence based on a search the legislative petitioners conducted of their official email accounts and personal phones: (1) communications between the legislative petitioners and another legislator; (2) communications between the legislative petitioners and legislative council staff; and (3) communications between the legislative petitioners and an individual who was neither a legislator nor a legislative council staff member. The Tribes only sought disclosure of materials that fell in the third category—communications that the Tribes argue are nonprivileged because they have been shared with "third parties." In short, the Tribes sought documents and communications for which any privilege had been waived.

In its petition for mandamus, the legislative petitioners contend broadly that, where the United States is not a party, any and all "request[s] for discovery . . . in a civil case [are] barred by common-law legislative privilege." The legislative petitioners acknowledge that the privilege is "qualified," but their argument recognizes no exception for discovery in a case like this one. At a minimum, however, the state legislative privilege can be waived. See Jackson Mun. Airport Auth., 2023 WL 3333607, at *5 (noting that the "legislative privilege can be waived when certain conditions apply"). And the legislative petitioners fail to address the issue of waiver. As a result, this court has no basis to determine whether the legislative petitioners believe they have, or have not, waived privilege as to any of the documents and communications shared with third parties. An order quashing the subpoenas here is likely to prohibit the discovery of at least some nonprivileged materials relevant to the pending litigation. That result sweeps too broadly.

Moreover, the legislative petitioners fail to explain how a privilege log would not adequately prevent disclosure of documents and communications that are protected by the state legislative privilege. They bear the burden of establishing the privilege. See Fed. R. Civ. P. 45(e)(2)(A) ("A person withholding subpoenaed information under a claim that it is privileged" must "expressly make the claim" and "describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."). And here, the district court instructed the legislative petitioners to produce a privilege log, "sufficient to distinguish privileged from non-privileged" materials, that would describe "the general nature of the document, the identity of the author, the identities of all recipients, and the date on which the document was written" for any communications they sought to withhold based on a claim of legislative privilege. The legislative petitioners' assertion that a privilege log is "not required with respect to a claim of legislative privilege" ignores that the district court ordered the disclosure of only nonprivileged materials. See Jackson Mun. Airport Auth., 2023 WL 3333607, at *5 (agreeing with the district court that a privilege log

was "necessary to determine which of the requested documents and communications are protected by legislative privilege"). A privilege log is an appropriate mechanism for resolving any privilege disputes that may arise, and the district court is best placed to determine whether and for what documents the state legislative privilege could apply.

Finally, the legislative petitioners argue that they would face an "undue burden" if compelled to produce the requested communications, which they assert number over 64,000 and would require 640 hours to review. See Fed. R. Civ. P. 45(d)(3)(A)(iv) (requiring that a court "quash or modify a subpoena" that "subjects a person to undue burden"). But the district court identified just 2,655 responsive materials in their possession, and of these, the legislative petitioners would need to produce about 558 documents and communications. As such, the district court concluded that the record did not support the petitioners' contention that the production of these materials would require the amount of work they claimed. These findings by the court are not clearly erroneous, and I see no reason to disturb them. See Silverman v. Silverman, 312 F.3d 914, 916 (8th Cir. 2002) (stating that where the district court's underlying finding is "solely a question of fact," we review it for clear error). All told, the district court recognized that some of the requested communications may be protected by the state legislative privilege. And in granting the motion to enforce the subpoenas, it directed the petitioners to produce only those materials that are nonprivileged. The district court did not abuse its discretion.

Nor did the district court abuse its discretion in denying the motion to quash the subpoena for testimony directed at Representative Devlin. The legislative petitioners broadly assert that Devlin's deposition is "barred by legislative privilege." But Representative Devlin remains free to invoke legislative privilege and decline to answer questions that intrude on the legislative process. And the petitioners do not contend that such limitations placed on Devlin's deposition, if imposed, would be insufficient to protect his assertion of privilege.

The district court thus acted well within its authority when it granted the motion to enforce the subpoenas to produce nonprivileged communications directed to the legislative petitioners, including Representative Jones, and denied the motion to quash the deposition subpoena directed to Representative Devlin. Mandamus relief, under these circumstances, is not warranted.

————————————————